314 F.3d 612
 UNITED STATES of America, United States Department of Justice, Appellee,
v.
PHILIP MORRIS INCORPORATED, et al., Appellees.
British American Tobacco (Investments) Ltd., Directly and as Successor to British-American Tobacco Company, Ltd., Appellant.
 No. 02-5210.
 United States Court of Appeals, District of Columbia Circuit.
 Argued September 3, 2002.
 Decided January 7, 2003.
 
 COPYRIGHT MATERIAL OMITTED Appeal from the United States District Court for the District of Columbia (99cv2496).
 On Motion for Stay Pending Expedited Appeal or, in the alternative, a Petition for a Writ of Mandamus.
 Bruce G. Sheffler argued the cause for appellant. With him on the motion/petition was Garyowen P. Morrisroe. Timothy M. Hughes entered an appearance.
 Sharon Y. Eubanks, Director, U.S. Department of Justice, argued the cause for federal appellee. With her on the opposition were Stephen D. Brody, Deputy Director, and Daniel K. Crane-Hirsch, Trial Attorney.
 Before: GINSBURG, Chief Judge, and SENTELLE and RANDOLPH, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 Dissenting opinion filed by Circuit Judge RANDOLPH.
 SENTELLE, Circuit Judge:
 
 
 1
 British American Tobacco (Investments) Ltd. ("BATCo"), seeks an emergency stay pending expedited appeal of the district court's discovery orders requiring BATCo to produce an allegedly privileged document. In the alternative, BATCo seeks a writ of mandamus vacating the orders. BATCo contends that this Court has jurisdiction over its appeal under the collateral order doctrine. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). On the merits, BATCo argues that the district court erred by ruling that BATCo waived the attorney-client privilege, without first considering BATCo's pending objections to the request for the allegedly privileged document. Because we agree that BATCo has demonstrated jurisdiction under the collateral order doctrine and satisfied the requirements for a stay, we grant its motion for a stay and dismiss the petition for mandamus as moot.
 
 I. Background
 
 2
 Appellee, the United States of America, initiated this lawsuit against BATCo and five other tobacco companies in September 1999 alleging that defendants violated the civil provisions of RICO, 18 U.S.C. §§ 1961-68 (2000), by engaging in "a pattern of racketeering activity" to "conceal the health risks of cigarette smoking and the addictiveness of nicotine." The government further alleges, in relevant part, that defendants have "destroy[ed] and conceal[ed] documents" and taken "other steps to shield documents and materials from discovery." As to remedy, the government seeks, inter alia, disgorgement of defendants' profits and recovery of the medical costs of the tobacco companies' customers.
 
 
 3
 The parties exchanged Comprehensive Requests for Production on August 22, 2000. The government requested that the defendants produce "[a]ll documents relating to record-creating, record-keeping, record-retention, record dissemination or distribution, and/or record-destruction policies, practices, and procedures ... in any part of your organization that has or had responsibility for ... research concerning smoking and health or addiction." On November 6, 2000, BATCo responded to the government's document requests, and objected, inter alia, to producing any documents created prior to August 19, 1994, except those contained in the Guildford Depository in England (the "Guildford objection"). The Depository was established in response to a parallel action filed against the same defendants by the State of Minnesota and contains over one million documents. State of Minnesota v. Philip Morris, Inc., No. C1-94-8565 (Minn.Super. Ct.1994). BATCo also objected to producing any documents in the possession of third parties if the documents were not also in BATCo's possession, custody, or control (the "third-party objection").
 
 
 4
 In March 2002, the Supreme Court of Victoria, Australia, publicly released a decision regarding discovery in a case involving W.D. & H.O. Wills ("Wills"), an Australian subsidiary of British American Tobacco Australia Services Limited ("BATAS"), in which BATCo has a minority ownership interest. McCabe v. Brit. Am. Tobacco Austl. Servs., Ltd., (2002) V.R. 73. The decision quotes extensively from a March 1990 memorandum prepared for Wills by an attorney at the British law firm Lovell, White & Durrant ("Lovell"), in its capacity as counsel for Wills and BATCo (the "Foyle Memorandum" or "the memo"). See id. The Foyle Memorandum advises Wills on modifying its document retention policy in light of increasing litigation against tobacco companies in the United States and Australia.
 
 
 5
 Subsequent to the McCabe decision's release, the government requested by letter that BATCo produce the Foyle Memorandum. BATCo responded that it had been "unable to locate the document[], or any evidence that plaintiff selected [it] for production."
 
 
 6
 On May 28, 2002, during the deposition of former BATCo CEO Ulrich Herter, government counsel requested the "immediate production" of the Foyle Memorandum so it could be used to refresh Herter's recollection. When BATCo's counsel declined, government counsel initiated an emergency teleconference with the district court to determine whether BATCo was required to immediately produce the Foyle Memorandum. During the teleconference, BATCo contended that the document was covered by the Guildford objection and informed the Court that it did not even know if the document was in its possession. Moreover, BATCo argued that the Foyle Memorandum was protected by the attorney-client privilege. The district court did not address BATCo's Guildford and third-party objections. Instead, the court ruled that BATCo had waived any claim of attorney-client privilege because the memo had not been listed in BATCo's privilege log. The court added that BATCo was free to re-litigate the underlying facts of the order before the Special Master in the case. The following day, the district court issued a written order memorializing the telephone ruling and requiring BATCo to produce the memo "if the document is in the control or possession of BATCo," and to make "all reasonable effort to locate" it. United States v. Philip Morris Inc., No. 99-2496 (D.D.C. May 29, 2002) ("Order 157").
 
 
 7
 On May 30, 2002, BATCo and the government twice appeared in telephonic conferences before the Special Master in which BATCo sought to attack Order 157. Although the argument in the first conference is not part of the record, BATCo appears to have raised its Guildford and third-party objections in this conference. See Oral Rep. and Recom. 56 at 35 (BATCo counsel raising objection in context of "reiterat[ing] what I said this morning"). It definitely raised them in the second conference. See id. at 35, 43. Like the district court, the Special Master did not address these objections. Instead he concluded that, because the Foyle Memorandum was in the possession of Lovell, it was "within the control and possession of BATCO" and thus required to be logged in the privilege log. Oral Rep. and Recom. 55 at 11. The Special Master therefore recommended that the district court issue an "order of further compliance" so that BATCo would immediately produce the memo. Id.
 
 
 8
 BATCo then submitted to the district court a sealed copy of the Foyle Memorandum and moved the district court to reconsider its orders compelling production. BATCo again urged the court to consider its Guildford and third-party objections before requiring BATCo to produce or log the Foyle Memorandum. See BATCo Br. in Supp. of Mot. for Recons. at 14. On July 2, 2002, the court denied the motion to reconsider and ordered BATCo to produce the memo within two days. United States v. Philip Morris Inc., No. 99-2496 (D.D.C. July 2, 2002) (order compelling production). The court held that because BATCo had "knowledge and possession" of the Foyle Memorandum "by at least February of 2002," BATCo was required under Federal Rule of Civil Procedure 26(e), to "identify and/or designate the document" as privileged at that time. Philip Morris, No. 99-2496, slip op. at 4 (D.D.C. July 2, 2002) (memorandum opinion accompanying order). Thus, the court concluded that BATCo's failure to list the memo on the privilege log waived BATCo's attorney-client privilege claim. Id. at 4-5. The court did not further address BATCo's objections.
 
 
 9
 BATCo requested that the district court stay its orders pending appeal. On July 10, 2002, the district court denied the motion for stay, reasoning that BATCo had not established appellate jurisdiction nor shown that it was likely to prevail on its challenge to the waiver ruling. Philip Morris, No. 99-2496, slip op. (D.D.C. July 10, 2002). The court also noted that BATCo would not suffer irreparable harm absent a stay, particularly given that many portions of the Foyle Memorandum have already been made public in McCabe. Id. at 2. By contrast, the district court found that a stay would substantially harm the government and undermine the public interest by jeopardizing the "extremely demanding" discovery schedule and July 15, 2003 trial date set by the court. Id. at 24.
 
 
 10
 BATCo timely filed this appeal and sought an emergency stay pending expedited review, claiming that the district court should have ruled on its pending objections to producing the Foyle Memorandum, and at that time, given BATCo a chance to log the memo.
 
 II. Analysis
 
 11
 In seeking a stay pending appeal, BATCo must show (1) that it has a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury if the stay is denied; (3) that issuance of the stay will not cause substantial harm to other parties; and (4) that the public interest will be served by issuance of the stay. Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir.1977).
 
 
 12
 We first consider our jurisdiction over BATCo's appeal and then address, in turn, the requirements for an emergency stay.
 
 A. Jurisdiction
 
 13
 BATCo argues that this Court has jurisdiction over its appeal under the collateral order doctrine, first enunciated by the Supreme Court in Cohen, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528. The collateral order doctrine is a narrow exception to the general rule that appellate review is only available for final orders. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712, 116 S.Ct. 1712, 1718, 135 L.Ed.2d 1 (1996). For jurisdiction to lie under Cohen's collateral order doctrine, BATCo must show that (1) the order from which it appeals conclusively determines the disputed question; (2) appellate review will resolve an important issue completely separate from the merits of the action; and (3) the order will be effectively unreviewable on appeal from a final judgment. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S.Ct. 684, 687-88, 121 L.Ed.2d 605 (1993); Nat'l Ass'n of Criminal Def. Lawyers v. United States Dep't of Justice, 182 F.3d 981, 984 (D.C.Cir.1999).
 
 
 14
 The first requirement is satisfied because the district court's order conclusively and finally determined that the Foyle Memorandum is not protected by the attorney-client privilege. In no way does the record suggest that the district court's conclusion is tentative or subject to revision.
 
 
 15
 The second requirement has two prongs-separability and importance. Clearly, the privilege question is separable from the merits of the underlying case. As to importance, "for the purposes of the Cohen test, an issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule." In re Ford Motor Co., 110 F.3d 954, 959 (3d Cir.1997); see also Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 878-79, 114 S.Ct. 1992, 1994, 128 L.Ed.2d 842 (1994) ("[T]he third Cohen question ... simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement."). Thus, the considerations underlying the final judgment rule — the costs of piecemeal review — must be weighed against the costs of delay. Johnson v. Jones, 515 U.S. 304, 315, 115 S.Ct. 2151, 2157, 132 L.Ed.2d 238 (1995); Ford, 110 F.3d at 959. The Supreme Court explained that "`important' in Cohen's sense [means] being weightier than the societal interests advanced by the ordinary operation of final judgment principles." Digital Equip., 511 U.S. at 879, 114 S.Ct. at 1994. For example, collateral order review is available to decide, inter alia, issues of federal court abstention, Quackenbush, 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1, Eleventh Amendment immunity, Puerto Rico Aqueduct, 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605, and qualified immunity, Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
 
 
 16
 In Ford, the Third Circuit addressed the issue before this court today and held that collateral order review is also available to challenge an attorney-client privilege ruling. 110 F.3d at 957-64. The Ford court analogized to Supreme Court precedent and held that the attorney-client privilege was the type of "institutionally significant status or relationship" that justifies collateral order review. Id. at 960. We agree, consistent with our decision In re Grand Jury Investigation of Ocean Transportation, 604 F.2d 672 (D.C.Cir.1979), in which we allowed interlocutory appeal of a privilege claim that arose after the appellant inadvertently produced allegedly privileged documents. Id. at 674.
 
 
 17
 The attorney-client privilege rests at the center of our adversary system and promotes "broader public interests in the observance of law and administration of justice" and "encourage[s] full and frank communication between attorneys and their clients." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege promotes sound legal advocacy by ensuring that the counselor knows all the information necessary to represent his client. Id. Only by ensuring that privileged information is never disclosed will these important interests be advanced. Ford, 110 F.3d at 962. Even though enforcement of the privilege often results in the suppression of probative evidence, our jurisprudence has determined that its value outweighs these costs. Similarly, we today conclude that the institutional benefits of allowing interlocutory review of attorney-client privilege claims outweigh the costs of delay and piecemeal review that may result.
 
 
 18
 The government proposes two reasons why BATCo's privilege claim differs from the immediately appealable privilege claims in Ford and Ocean Transportation. First, the government argues that BATCo is not asserting a privilege claim because the district court did not reject a timely asserted claim of privilege, but merely held that BATCo waived the privilege by failing to log the Foyle Memorandum. On these facts, this is a distinction without a difference. The only reason the district court did not reach the merits of BATCo's privilege claim is because of the court's allegedly erroneous waiver ruling. A decision defining the contours of a waiver of privilege is no less "important" for Cohen purposes than a ruling on the contours of the privilege itself. An erroneous finding of waiver, like an erroneous ruling denying a claim of privilege, eviscerates the same important institutional interests in preserving privileged information, and derivatively, full and frank communication between client and attorney.
 
 
 19
 Second, the government argues that the privilege issue is not important because so much of the Foyle Memorandum has already been released in the McCabe decision. This argument misconstrues Cohen's importance requirement. The importance prong requires weighing the "institutionally significant status or relationship" at stake, Ford, 110 F.3d at 960, not the individual circumstances of each case. Johnson, 515 U.S. at 315, 115 S.Ct. at 2157 ("We of course decide appealability for categories of orders rather than individual orders. Thus, we do not now in each individual case engage in ad hoc balancing to decide issues of appealability.") (citation omitted). The attorney-client privilege protects an important status or relationship regardless of whether some portion of the privileged material has already been lost. Total disclosure of the Foyle Memorandum would unquestionably further impair the attorney-client privilege. See Ocean Transp., 604 F.2d 672 (allowing collateral order review of privilege ruling even though allegedly privileged documents had inadvertently been produced to prosecution). Therefore, we conclude that BATCo's appeal of the district court's ruling satisfies Cohen's importance requirement.
 
 
 20
 To satisfy Cohen's final requirement for jurisdiction under the collateral order doctrine, BATCo must also show that the district court's discovery order will be effectively unreviewable on appeal from a final judgment. Puerto Rico Aqueduct, 506 U.S. at 144, 113 S.Ct. at 687-88; Criminal Def. Lawyers, 182 F.3d at 984. An order is effectively unreviewable if it "involves an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 499, 109 S.Ct. 1976, 1978, 104 L.Ed.2d 548 (1989) (quotation omitted). While BATCo could appeal the discovery order after final judgment, the appellate court would merely send the case back for re-trial without use of the privileged materials. By that point, the entirety of the Foyle Memorandum will have been disclosed to third parties, making the issue of privilege effectively moot. See Ocean Transp., 604 F.2d at 674; see also In Re Papandreou, 139 F.3d 247, 251 (D.C.Cir.1998) (stating in dictum that "[d]isclosure followed by appeal after final judgment is obviously not adequate in [privilege] cases-the cat is out of the bag"). In this case, the right sought to be protected — BATCo's privilege — would be destroyed if interlocutory appeal is not allowed. Moreover, the United States' attorneys could gain valuable new leads from the Foyle Memorandum. See Chase Manhattan Bank, N.A. v. Turner & Newall, PLC, 964 F.2d 159, 165 (2d Cir.1992). It would be impossible for a court to sort out and redress the harm caused by the incorrect disclosure.
 
 
 21
 Some of our sister circuits have suggested that a party might obtain effective review of an adverse privilege order by refusing to obey the district court's discovery order and thereby standing in contempt or incurring some other sanction. By appealing the sanction, they suggest, a party may have an adverse privilege ruling reviewed upon final judgment without disclosing the privileged document. See FDIC v. Ogden Corp., 202 F.3d 454, 458 n. 2 (1st Cir.2000); see also Reise v. Bd. of Regents of Univ. of Wisconsin, 957 F.2d 293, 295-96 (7th Cir.1992) (discussing this method of obtaining review of order to submit to medical examination). It is principally because of the availability of the disobedience route to review that a majority of the circuits to have considered the issue have held that adverse privilege rulings are not appealable. See Ogden, 202 F.3d at 458 n. 2; Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d 1122, 1125 (7th Cir.1997) (in case involving "law enforcement investigatory privilege," holding discovery order not within collateral order doctrine "even if it is an order denying a claim of privilege"); Simmons v. City of Racine, 37 F.3d 325, 327 (7th Cir.1994) (in case involving "informer's privilege," noting that discovery orders are not appealable under Cohen even if "issued over an objection that the information at issue is privileged"); Boughton v. Cotter Corp., 10 F.3d 746, 750 (10th Cir.1993); Texaco, Inc. v. Louisiana Land & Exploration Co., 995 F.2d 43 (5th Cir.1993) (enforcing general inapplicability of collateral order doctrine to discovery orders in case involving attorney-client privilege claim); Chase Manhattan Bank, N.A. v. Turner & Newall, PLC, 964 F.2d 159, 161-63 (2d Cir.1992) (same but issuing writ of mandamus); Reise, 957 F.2d at 295 ("even orders to produce information over strong objections based on privilege are not appealable"); Quantum Corp. v. Plus Dev. Corp., 940 F.2d 642, 644 (Fed.Cir.1991); see also American Express Warehousing, Ltd. v. Transamerica Ins. Co., 380 F.2d 277, 280-83 (2d Cir.1967) (workproduct privilege).
 
 
 22
 Although these authorities are weighty, we cannot follow them. At least some of the holdings are based in part upon the assumption that disobedience may lead to a contempt citation that would itself be an appealable order. See Ogden, 202 F.3d at 458 n. 2. In this circuit, however, it is settled that a civil contempt citation is not appealable as a collateral order. Byrd v. Reno, 180 F.3d 298 (D.C.Cir.1999). In the related context of determining whether a petitioner for mandamus has adequate alternative means of relief, we have expressed concern that a party that seeks review does not know in advance "whether refusal to comply with the discovery order will result in a civil contempt order or a criminal contempt order." In re Sealed Case No. 98-3077, 151 F.3d 1059, 1065 (D.C.Cir.1998); see also 15B C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 3914.23, at 146 (2d ed.1992). Although there may be other sanctions that the district court could impose, such as striking all or a portion of the party's pleadings, see FED.R.CIV.P. 37(b)(2), these are in the district court's discretion and are therefore not reliable avenues to appeal. Moreover, they may be of such severity that a reasonable party would not risk incurring them, even in order to preserve a clearly meritorious privilege claim.
 
 
 23
 The dissent argues that our decision in Byrd requires us to hold that a privilege ruling is not appealable because a privilege ruling is merely a "predicate" ruling to an unappealable civil contempt citation. See Dissent at 623-24. Since BATCo could not appeal the contempt citation under Byrd, the dissent reasons, it should not be able to appeal the "predicate" privilege ruling either. We do not think that the dissent's conclusion follows from our holding in Byrd.
 
 
 24
 In Byrd, we held that a general class of orders — civil contempt citations — are not final orders under 28 U.S.C. § 1291. That is an entirely different question than the one we face today: whether attorney-client privilege rulings — a narrow subset of the rulings that might eventually lead to a contempt citation — fall within Cohen's collateral order exception to the final order rule. Neither this Court in Byrd nor the Supreme Court has held that certain types of rulings are excluded from Cohen's collateral order exception merely because they may lead to an unappealable civil contempt citation. Rather, an order is appealable under Cohen if it meets the three prong test of conclusiveness, separability and importance, and effective unreviewability. This inquiry requires careful examination of the type of order at issue to determine whether the benefits of immediate appealability outweigh the costs that may result from piecemeal adjudication, see Johnson v. Jones, 515 U.S. 304, 315, 115 S.Ct. 2151, 2157-58, 132 L.Ed.2d 238 (1995), not merely a cursory glance to determine whether the order could lead to an unappealable civil contempt citation, as the dissent suggests.
 
 
 25
 Finally, the Byrd Court itself recognized that its central holding — that civil contempt orders are not final orders under § 1291 — did not eliminate the need for the particularized Cohen inquiry. Indeed, the Byrd Court separately addressed the issue of whether the underlying discovery order and civil contempt order were immediately appealable under the collateral order doctrine. See 180 F.3d at 302. If the dissent's reading were correct, the Byrd Court would not have needed to address the collateral order doctrine because that issue would have been precluded by the Court's holding that civil contempt orders are not final orders. For all of these reasons, we are unpersuaded by the dissent's argument that this Court lacks jurisdiction over BATCo's appeal.
 
 
 26
 Therefore, we hold that BATCo has demonstrated jurisdiction under the collateral order doctrine. We turn now to BATCo's likelihood of success on the merits of its claim.
 
 B. Likelihood of Success on the Merits
 
 27
 BATCo contends that it is likely to succeed on the merits because the district court failed to consider BATCo's pending objections to producing the Foyle Memorandum and thus incorrectly found that BATCo waived its privilege claim by failing to log it. BATCo argues that even if the district court overruled its objections, BATCo should have been given, at that time, an opportunity to place the Foyle Memorandum on its privilege log.
 
 
 28
 In considering the merits of BATCo's claim, we begin at Federal Rule of Civil Procedure 26(b)(5). The rule provides that any party claiming privilege for a document requested during discovery shall log the document on a privilege log. FED.R.CIV. P. 26(b)(5). The 1993 Advisory Committee Notes explain the application of the rule when a party has pending objections to the document request. See FED.R.CIV.P. 26(b)(5) advisory committee's note. The Notes provide that the court should first rule on the pending objections and then, if it overrules those objections, give the party claiming privilege an opportunity to log the allegedly privileged documents. Id. In short, if a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections.
 
 
 29
 BATCo claims that its Guildford and third-party objections apply to the Foyle Memorandum. Although there is some doubt whether these objections apply to the Foyle Memorandum, the United States did not raise this argument in opposing the present motion for stay. Moreover, there is no question that the objections were timely raised and at least facially seem to apply to the memo. If these objections are found to apply to the Foyle Memorandum, then the district court's failure to address the objections, or if it overruled them, then its failure to give BATCo the opportunity to log the memo, was error. Therefore, under these circumstances, we find that BATCo is likely to succeed on its claim that the district court should have considered these objections before ruling that BATCo had waived its privilege. If BATCo succeeds on its appeal, it would be entitled to a remand for the district court to address BATCo's objections as applied to the Foyle Memorandum.
 
 C. Irreparable Injury
 
 30
 BATCo would suffer irreparable injury if a stay is denied. Although BATCo "has not asserted any specific irreparable injury that would occur" if it produced the Foyle Memorandum, Philip Morris, No. 99-2496, slip op. at 2 (D.D.C. July 10, 2002), the general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of privileged documents to an adverse party is clear enough. The government argues that we should disregard this harm because parts of the Foyle Memorandum have already been disclosed in the McCabe opinion. We disagree. The release of the McCabe opinion does not diminish the harm that would result from releasing additional privileged information. Moreover, the attorneys for the United States would be able to use the Foyle Memorandum to pursue new leads on discovery and witness questioning. Chase Manhattan Bank, 964 F.2d at 165. The implications of this use of privileged material would be very difficult to remedy on appeal.
 
 D. Substantial Harm to Other Parties
 
 31
 The government argues that a stay would delay the trial schedule set by the district court and harm the government's ability to conduct discovery in this case. A mere assertion of delay does not constitute substantial harm. Some delay would be occasioned by almost all interlocutory appeals. Further, any delay will be minimized by our expedition in hearing BATCo's appeal. In short, there is no reason to believe a minor delay will substantially harm the United States.
 
 E. Public Interest
 
 32
 Finally, we consider whether the public interest would be served by granting a stay. As discussed above, supra at 618, the attorney-client privilege is an "institutionally significant status or relationship" with deep roots in our nation's adversary system. Ford, 110 F.3d at 960. As such, the privilege advances "broader public interests in the observance of law and administration of justice." Upjohn, 449 U.S. at 389, 101 S.Ct. at 682. We conclude that granting a stay to allow BATCo to defend its claim of privilege will serve these same public interests.
 
 III. Conclusion
 
 33
 Because we are satisfied that we have jurisdiction over this appeal under the collateral order doctrine and that BATCo has met all of the requirements for an emergency stay, we grant its motion for emergency stay, expedite the underlying appeal, and dismiss its petition for mandamus as moot.
 
 
 34
 
 So ordered.
 
 
 RANDOLPH, Circuit Judge, dissenting:
 
 35
 I do not believe we have appellate jurisdiction over the district court's discovery orders and I would therefore deny the stay.
 
 
 36
 The question is whether the orders are "final decisions" within the meaning of 28 U.S.C. § 1291. The court holds that an order requiring a party to produce a document allegedly protected by the attorney-client privilege is immediately appealable under § 1291, pursuant to the interpretation of that provision in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949). See Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373-75, 101 S.Ct. 669, 673-74, 66 L.Ed.2d 571 (1981).
 
 
 37
 If the underlying action here had been a grand jury proceeding, we would not have appellate jurisdiction over BATCo's appeal. The law is settled that if a district court requires a grand jury witness to produce documents over the witness's objections, the witness may not immediately appeal under § 1291, but must first subject himself to contempt and appeal the contempt citation. United States v. Ryan, 402 U.S. 530, 532-33, 91 S.Ct. 1580, 1581-82, 29 L.Ed.2d 85 (1971), so holds and we have consistently followed this rule in grand jury cases involving attorney-client privilege claims. See, e.g., In re Sealed Case, 162 F.3d 670, 672-73 (D.C.Cir.1998); In re Sealed Case, 107 F.3d 46, 48 n. 1 (D.C.Cir.1997); In re Sealed Case, 737 F.2d 94, 97 (D.C.Cir.1984).
 
 
 38
 This is a civil case, but § 1291 also governs appeals in criminal cases. Cobbledick v. United States, 309 U.S. 323, 324, 60 S.Ct. 540, 540-41, 84 L.Ed. 783 (1940); United States v. MacDonald, 435 U.S. 850, 853, 98 S.Ct. 1547, 1549, 56 L.Ed.2d 18 (1978). Why then is it that in a grand jury proceeding the witness must disobey the order to produce and be held in contempt before appealing, but — as the court now holds — in a civil action a party may appeal the order forthwith? Byrd v. Reno, 180 F.3d 298 (D.C.Cir.1999), the majority explains, holds that civil contempt orders are not final under § 1291. Thus BATCo could not appeal if it refused to produce the document and were held in civil contempt. But it seems to me that this is a reason against — not in favor of — taking jurisdiction of an appeal from an order that would serve as the predicate for holding the party in contempt. At issue in both appeals would be whether the district court correctly rejected a privilege claim and ordered the party to disclose attorney-client communications. Of the two cases, civil contempt is far more serious; a party may be imprisoned for violating a court's disclosure order, as Hickman v. Taylor, 329 U.S. 495, 500, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947), illustrates.
 
 
 39
 In any event, the majority's distinction cannot account for the difference between civil cases and grand jury proceedings. In both types of proceedings a person may be held in civil contempt, rather than criminal contempt, for refusing to obey a district court order to testify or produce documents. See 28 U.S.C. § 1826; Shillitani v. United States, 384 U.S. 364, 371 n. 9, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966). In fact, the Supreme Court has instructed the district courts to prefer civil contempt as a sanction to force compliance with their orders even in criminal proceedings. See id. The prospect of civil contempt, in other words, looms as much in grand jury proceedings as in civil cases.
 
 
 40
 I believe there is another explanation. One of the policies underlying the final judgment rule of § 1291 is "avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." Cobbledick, 309 U.S. at 325, 60 S.Ct. 540 at 541. "The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results." Cohen, 337 U.S. at 546, 69 S.Ct. at 1224. But in grand jury proceedings a recalcitrant witness usually can obtain review of his attorney-client privilege claim only on review of a criminal or civil contempt order. See 2 SARA SUN BEALE ET AL., GRAND JURY LAW AND PRACTICE § 11:18, at 11-65 (2d ed. Supp.2001). The same is true regarding non-party witnesses in civil cases. See Byrd, 180 F.3d at 300. There will be no other final judgment from which an appeal may be brought. Civil contempt orders against grand jury witnesses are therefore appealable, see BEALE, GRAND JURY LAW § 11:18, at 11-65, and so are civil contempt orders against non-party witnesses in civil cases, see Byrd, 180 F.3d at 300; United States v. Johnson, 801 F.2d 597, 599 (2d Cir.1986). That is why the Court in Ryan, 402 U.S. at 532, 91 S.Ct. at 1581-82, after saying that the grand jury witness there could appeal a contempt citation, did not distinguish between civil and criminal contempt. (Congress has required in 28 U.S.C. § 1826(b) — the recalcitrant witness statute applicable to court proceedings and grand jury proceedings — that appeals from civil contempt orders must be "disposed of" no later than 30 days from the filing of the appeal.) I do not read Byrd as holding otherwise. See 180 F.3d at 302.
 
 
 41
 What I have written thus far serves to distinguish In re Grand Jury Investigation of Ocean Transp., 604 F.2d 672 (D.C.Cir.1979). As the caption indicates, this was a grand jury proceeding in which a company, in response to a subpoena, inadvertently turned over allegedly privileged documents to the government. The district court rejected the company's motion to have the documents returned. We held that the court's order was "final" under § 1291. The appeal came within the doctrine of Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), because the company could not contest the order by refusing to comply with it, and thus could not subject itself to contempt. The appeal also fell within the rationale of Cohen, not because there was anything particularly special about the attorney-client privilege, but because this was the company's only opportunity for appellate review of its privilege claim. No criminal trial was pending. No final judgment other than the denial of the motion for return could bring up the issue. Ocean Transp., 604 F.2d at 673-74. That is not the situation here. BATCo could raise the issue later on appeal if it lost on the merits in the district court, or on cross-appeal if it prevailed and the government appealed.
 
 
 42
 I agree with the majority that it is necessary to analyze orders that might lead to civil contempt, on the one hand, and civil contempt citations themselves, on the other, separately under the three-prong Cohen test. Maj. op. at 620-21. But our judgment in Byrd that civil contempt citations are not appealable indicates that the underlying issues — identical to those at the predicate order stage — fail either the importance or the effective unreviewability prong of Cohen. Cf. Powers v. Chicago Transit Auth., 846 F.2d 1139, 1142 (7th Cir.1988).
 
 
 43
 Aside from this, there is an entirely separate reason why we do not have appellate jurisdiction over this appeal. The circuits are split on the question whether, in civil cases, discovery orders rejecting a party's attorney-client privilege claim are immediately appealable. The Second, Fifth, and Tenth Circuits hold that there is no appellate jurisdiction because such orders are not final. See Boughton v. Cotter Corp., 10 F.3d 746, 749-50 (10th Cir.1993); Texaco Inc. v. Louisiana Land & Exploration Co., 995 F.2d 43, 44 & n. 4 (5th Cir.1993); Chase Manhattan Bank, N.A. v. Turner & Newall, PLC, 964 F.2d 159, 162-63 (2d Cir.1992). A case from the Seventh Circuit indicates that it too would refuse jurisdiction in such an appeal. See Reise v. Bd. of Regents, 957 F.2d 293, 295-96 (7th Cir.1992). In re Ford Motor Co., 110 F.3d 954 (3d Cir.1997), on which my colleagues rely, goes the other way. I will assume arguendo that Ford Motor is correct, although I have severe doubts. I am willing to make this assumption because I do not believe this appeal is anything other than a run-of-the-mill discovery dispute. The Court's assertion that "[a]n erroneous finding of waiver ... eviscerates the same important institutional interests" as an erroneous attorney-client privilege ruling, maj. op. at 618, is incorrect. The interests protected by the attorney-client privilege are not threatened by requiring BATCo to await final judgment before bringing the issue to us.
 
 
 44
 The order before us has nothing to do with the elements of the attorney-client privilege and everything to do with BATCo's satisfaction of discovery rules. To decide whether the district court properly required production of the disputed memorandum we will not have to consider, as we would in a true privilege dispute, any of the elements of the privilege — under what conditions the memorandum was written, or for what purpose. Instead, this appeal will turn on whether BATCo's attorneys complied with FED.R.CIV.P. 26(b)(5), which requires that a party claiming a privilege "make the claim expressly and ... describe the nature of the documents ... not produced" with some specificity. Our decision therefore will have no impact on confidential communications between clients and their attorneys. Cf. Swidler & Berlin v. United States, 524 U.S. 399, 407, 118 S.Ct. 2081, 2086, 141 L.Ed.2d 379 (1998). If we did not hear the appeal, clients' incentives to communicate frankly with their attorneys would remain as strong as ever. The only possible change would be that clients might be more careful to hire attorneys who comply rigorously with the discovery rules.
 
 
 45
 For good reasons, discovery orders are not usually appealable before the end of the litigation in the district court. See McKesson Corp. v. Islamic Republic of Iran, 52 F.3d 346, 353 (D.C.Cir.1995). The "costs of delay via appeal, and the costs to the judicial system of entertaining these appeals, exceed in the aggregate the costs of the few erroneous discovery orders that might be corrected were appeals available.... Discovery orders ... are readily reviewable after final decision. A party aggrieved by the order assures eventual review by refusing to comply." Reise, 957 F.2d at 295. I would therefore deny the stay pending appeal. If BATCo wishes to preserve the discovery issue, it should refuse to produce the memorandum and bring the question to us after final judgment. It is no answer to say that the company might be unwilling to risk sanctions for disobeying a court order. Maj. op. at 620. The risk of sanctions facing parties in civil cases is the same as that faced by recalcitrant grand jury witnesses, yet we require grand jury witnesses to face contempt before appealing, which at least gives some assurance that the claim of privilege is sincerely interposed.