Notice: This opinion is subject to formal revision before publication in the
Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify
the Clerk of any formal errors in order that corrections may be made
before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued September 27, 2004        Decided November 2, 2004

No. 04-5207

UNITED STATES OF AMERICA,
APPELLEE

v.

BRITISH AMERICAN TOBACCO (INVESTMENTS) LTD.,
APPELLANT

PHILIP MORRIS USA INC., ET AL., *F/K/A*
PHILIP MORRIS INCORPORATED,
APPELLEES

————

Consolidated with
04-5208

————

Appeals from the United States District Court
for the District of Columbia
(No. 99cv02496)

————

Bills of costs must be filed within 14 days after entry of judgment.
The court looks with disfavor upon motions to file bills of costs out
of time.

*Jack McKay* and *Bruce G. Sheffler* argued the causes for appellants British American Tobacco Australia Services, Ltd., and British American Tobacco (Investments) Ltd. With them on the briefs were *Barry H. Gottfried*, *Alvin B. Dunn*, and *Philip A. Pfeffer*.

*Sharon Y. Eubanks*, Director, U.S. Department of Justice, argued the cause for appellee the United States of America. With her on the brief were *Peter D. Keisler*, Assistant Attorney General, *Stephen D. Brody*, Deputy Director, *Carolyn Clark*, Senior Trial Attorney, *Meredith L. Burrell*, *Patrick M. Klein,* and *Daniel K. Crane–Hirsch*, Trial Attorneys.

Before: EDWARDS, RANDOLPH, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: For the third time, we consider the district court's determination that one of the defendants in the United States' RICO action against cigarette companies waived its attorney-client privilege by failing to log a document sought in discovery. As we emphasized the last time around, "waiver of privilege is a serious sanction" that a court should impose only if a party behaves unreasonably or worse. *See United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (2003) (quoting *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995)) (internal quotation marks omitted). Because the record in this case does not reflect the kind of behavior that would satisfy this demanding standard, we reverse and remand with instructions to allow the defendant to log the document.

## I.

In 1999, the United States sued several tobacco companies, including appellant British American Tobacco (Investments) Limited ("BATCo"), alleging in part that these companies had violated civil provisions of the RICO statute, 18 U.S.C. §§ 1961-1968, by conspiring to mislead the public about the addictive nature and health risks of smoking. As part of its comprehensive document production request, made in 2000, the government sought all documents relating to the compa-

nies' record-retention and record-destruction policies from 1954 to the present. In response, BATCo raised several objections to various categories of documents. This interlocutory appeal involves three of those objections—known as the Guildford, third-party, and foreign objections—which we describe later.

BATCo owns a substantial minority of the other appellant, British American Tobacco Australia Services, Limited ("BATAS"). Until 1999, BATCo fully owned BATAS's predecessor, W.D. & H.O. Wills ("Wills").

In April 2002, the government requested that BATCo turn over a document referred to in an Australian court proceeding, *McCabe v. British American Tobacco Australia Services Ltd.*, [2002] V.S.C. 73, to which BATAS was a party. Written for BATCo and possibly Wills in 1990 by Andrew Foyle, a solicitor in the London firm of Lovell, White & Durrant, this memorandum—the Foyle memorandum—discussed Wills's document-retention policy with reference to possible future litigation against BATCo and its affiliates in Australia and other parts of the world, including the United States. BATCo had neither produced this memorandum nor listed it on its privilege log. In response to the government's request, BATCo wrote that it needed more information to locate the memorandum.

Matters rested there until an emergency teleconference on May 28, 2002, during which the district court found that BATCo, by failing to log the document, had waived any privilege in it. Although the court ordered BATCo to produce the memorandum, it gave the company permission to relitigate the matter before the Special Master. During proceedings before both the Special Master and the district court, BATCo argued that it had no obligation to log the memorandum in the first place. According to BATCo, three of its general objections applied to the Foyle memorandum, meaning that the company had to log the memorandum only if the court overruled these objections. Without addressing BATCo's objections, the district court ruled that BATCo's failure to log the memorandum justified waiver of its attor-

ney-client privilege as a sanction. In the same opinion, the district court noted that BATAS would "be deemed to have waived any opportunity to present" privilege claims of its own, since it was aware of the litigation and had "ample time" to intervene, yet had not done so. *United States v. Philip Morris Inc.*, No. 99-2496 (D.D.C. July 2, 2002).

BATCo appealed, arguing that the district court erred by finding waiver of privilege before determining whether any of BATCo's three objections applied to the Foyle memorandum. Noting that "there is no question that the objections were timely raised," *United States v. Philip Morris Inc.*, 314 F.3d 612, 621 (D.C. Cir. 2003) (*Philip Morris I*), we granted a stay pending appeal, *id.* at 622, and later vacated the district court's order, concluding that the court had erred by failing to address whether any of the objections applied, *United States v. Philip Morris Inc.*, 347 F.3d 951, 954-55 (D.C. Cir. 2003) (*Philip Morris II*). We held that should the district court determine that the objections did not apply, it must "then decide whether the party should be deemed to have waived the privilege. Waiver is not automatic, particularly if the party reasonably believed that its objections applied to the document." *Id.* at 954.

On remand, in a decision designated as "Order 557" and issued in June 2004, the district court once again found that BATCo had waived any privilege it held in the Foyle memorandum. *United States v. Philip Morris USA Inc.*, 321 F. Supp. 2d 87 (D.D.C. 2004). Specifically, the court determined that BATCo's three objections did not apply to the Foyle memorandum, that "BATCo's failure to locate, log, and object in a timely fashion . . . was an intentional and knowing attempt to evade its discovery obligations," and that waiver of privilege was an appropriate sanction. *Id.* at 90-93.

Meanwhile, the government had moved in 2003 to require BATCo to turn over BATAS's documents from the *McCabe* proceedings. Reasoning that BATCo had sufficient control over BATAS to require such production, the district court granted this motion in Order 343. BATAS sought and received permission to intervene "to assert and, if necessary,

litigate the privileges it holds in the documents in its possession that are the subject of the Court's Order #343." *United States v. Philip Morris USA Inc.*, No. 99-2496 (D.D.C. Dec. 5, 2003). As part of its intervention, BATAS served the government with a log of *McCabe* documents over which it asserted privilege. Even though BATAS never identified Foyle as the author, this log included several entries for the Foyle memorandum—over which BATAS claimed to retain its attorney-client privilege by virtue of a higher Australian court's reversal of the *McCabe* decision. *See British American Tobacco Australia Services Ltd. v. Cowell*, [2002] V.S.C.A. 197, 2002 WL 31737235 (concluding that the judge in the *McCabe* proceedings erred in deeming BATAS's privilege in the memorandum waived).

Although BATAS formally intervened in the Order 343 proceedings, it filed nothing in the proceedings relating exclusively to the Foyle memorandum, i.e., the litigation that led to Order 557, until after the district court entered that order. At that point, BATAS sought an emergency stay, pointing to its privilege interest in the Foyle memorandum. BATAS also filed an appeal with this court, arguing that the district court erred by requiring BATCo to produce the memorandum without first addressing BATAS's privilege claims regarding the memorandum. Simultaneously, BATCo filed an appeal challenging the substance of Order 557. Having consolidated these appeals, we now must decide (1) whether BATAS's arguments are properly before us, and (2) whether the district court correctly ruled that BATCo waived its asserted privilege in the Foyle memorandum.

## II.

We can easily dispose of BATAS's appeal. Despite having full notice of the ongoing discovery proceedings exclusive to the Foyle memorandum, BATAS filed nothing in those proceedings until the district court entered Order 557—more than two years after the discovery battle over the memorandum began. BATAS now argues that the district court order permitting it to intervene in Order 343 proceedings also

authorized its intervention with regard to *any* litigation related to *McCabe* documents, including the proceedings specific to the Foyle memorandum. Insisting that the authorized intervention was limited in scope to proceedings related to Order 343, the government responds that BATAS never received permission to intervene in the proceedings specific to the memorandum.

We need not decide which position is correct, for either way we decline to consider BATAS's appeal. If BATAS correctly interprets the scope of its Order 343 intervention, then it should have appeared in the proceedings specific to the Foyle memorandum and raised its interests before the district court entered Order 557. As we have repeatedly held, parties may not raise claims for the first time on appeal. *See, e.g.*, *Krieger v. Fadely*, 211 F.3d 134, 135-36 (D.C. Cir. 2000). If the government is correct that BATAS's intervention related only to production obligations stemming from Order 343, then BATAS is not a party to the Order 557 litigation and we lack jurisdiction over its appeal. *See Moten v. Bricklayers Int'l Union of Am.*, 543 F.2d 224, 227 (D.C. Cir. 1976) ("It has long been settled that one who is not a party to a record and judgment is not entitled to appeal therefrom.") (quoting *United States v. Siegel*, 168 F.2d 143, 144 (D.C. Cir. 1948)) (internal quotation marks omitted); *cf. United States v. AT&T*, 642 F.2d 1285, 1290 (D.C. Cir. 1980) (permitting appeal by party denied intervention "only if the district court's denial of intervention was erroneous"). We thus dismiss BATAS's appeal.

## III.

In *Philip Morris II*, we directed the district court to "decide whether any of BATCo's three objections covered the Foyle Memorandum; whether waiver was an appropriate sanction if no objection applied; and whether, if an objection did apply, it should be overruled." 347 F.3d at 955. Following this framework, the district court determined that none of the three objections applied to the Foyle memorandum and

imposed privilege waiver as a sanction. 321 F. Supp. 2d at 90-93. We consider each of these determinations in turn.

*The Objections*

The Guildford objection relates to a depository, developed by BATCo during an earlier lawsuit, which contains BATCo documents written prior to August 18, 1994. BATCo objected to the government's discovery requests

> to the extent that discovery sought is obtainable from another source that is more convenient, less burdensome and less expensive. This source is the Guildford Depository. . . .
>
> BATCO objects to the Comprehensive Requests to the extent they may purport to require BATCo to conduct an enormously expensive, duplicative and unduly burdensome review of documents that BAT-Co has already made available by production into the Guildford Depository. BATCo will not produce documents located in the Guildford Depository for discovery and inspection outside of the Guildford Depository.

BATCo concedes that the Guildford Depository does not contain the Foyle memorandum. It nevertheless argues that the Guildford objection, properly interpreted, applies to any document, like the Foyle Memorandum, written before August 18, 1994, regardless of whether the document is at Guildford.

The district court rejected BATCo's argument, noting that "the Guildford Objection, on its face, applies only to documents which actually were produced into the Depository." 321 F. Supp. 2d at 91. "As the Foyle Memorandum was not 'obtainable from,' 'made available' at, or 'located in' the Guildford Depository—explicit requirements for application of the Guildford Objection—it is clear that the Guildford objection can not be read to cover the Foyle Memorandum." *Id.* We agree. As the district court aptly explained, BATCo's interpretation makes no sense in light of the objection's plain

language—which BATCo itself drafted. Simply put, the Guildford objection has no applicability to the Foyle memorandum because the memorandum is not at Guildford.

The plain language of BATCo's third-party objection bears an equally meager relationship to BATCo's interpretation. BATCo objected to the document request "to the extent that [it] purports to require BATCo to produce documents in the possession of a third party or non-party which are not in the possession, custody or control of BATCo." BATCo does not claim that it lacks control over the memorandum; indeed, the district court found that BATCo had control since February 2002. *See* 321 F. Supp. 2d at 91. Instead, BATCo interprets the objection to apply to all documents in the hands of third parties, regardless of whether those documents are within BATCo's control. Under BATCo's interpretation, the objection would apply to the Foyle memorandum because BATCo's law firm possessed its only copy—even though the district court had found that BATCo had control over this copy, *see id.*

Once again, the district court rejected BATCo's interpretation. *Id.* Once again, we readily agree. As the objection's plain language indicates, "a party's possession, custody, or control of a document is the crucial question for application of the Objection." *Id.* BATCo's interpretation reads the phrase "which are not in the possession, custody or control of BATCo" out of the objection altogether. *Cf. Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) ("A document should be read to give effect to all its provisions and to render them consistent with each other."). Because BATCo has control over the Foyle memorandum, the third-party objection does not apply.

The foreign objection poses a harder case. It states:

> BATCo objects to these Comprehensive Requests on the grounds that they are overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent that they purport to seek documents pertaining to the manufacture, advertising, marketing, promotion

or sale of tobacco products not sold in the United States or activities of any kind undertaken for markets outside the United States.

As we read the district court's opinion, that court held that the foreign objection deals with documents pertaining to activities undertaken solely for foreign markets. *See* 321 F. Supp. 2d at 92. Rejecting BATCo's reading "that its Foreign Objection covers documents having *any* relationship to a market outside the United States," the court observed that this interpretation would "produce the untenable result that virtually all of [BATCo's] documents would be subject to the Foreign Objection—BATCo is, after all, based in England." *Id.*

Unlike the Guildford and third-party objections, the foreign objection has several plausible interpretations. It could apply to "documents pertaining to . . . activities of any kind undertaken [solely] for markets outside the United States" (the district court's view), to "documents pertaining to . . . activities of any kind undertaken [to any degree] for markets outside the United States" (BATCo's view), or to something in between. Standing alone, the second approach seems the most natural, but it also creates tension with the objection's first part—BATCo's stated reasons for objecting. BATCo objected that production would be "overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent" that it had to produce such documents. If we read BATCo's objection as applying to *all* documents that reference a foreign market, then the scope of this objection would sweep so far beyond BATCo's reasons for objecting as to create a near absurdity. BATCo would have no obligation to produce documents that would be admissible and highly relevant to the government's RICO charges as long as such documents also referred to activities undertaken for foreign markets.

This internal contradiction makes it difficult to infer the meaning of the foreign objection from its language alone. A letter sent by the government to BATCo, however, helps shed light upon the proper scope of the objection. *Cf. Davis v.*

*Chevy Chase Fin., Ltd.*, 667 F.2d 160, 169-70 (D.C. Cir. 1981) (noting that where provisions within a contract appear to conflict, the court may look to extrinsic evidence in construing it). In that letter, the government described BATCo's representations of the foreign objection as follows: "Our notes reflect your statement that BATCo intends to search for and produce documents responsive to the United States' Comprehensive Requests that contain information that 'reasonably bears' on the U.S. market or that 'relates to core issues in this case.'" The letter then gave examples of what "we understand are . . . BATCo's views on what *is* discoverable in this action," including "internal or external BATCo communications relating to the marketing of safer cigarettes anywhere in the world" and "an overseas marketing campaign being considered for use in the United States." We think this letter reveals the proper interpretation of the foreign objection—that it applies only to documents with at most a de minimis relationship to U.S. markets and the core issues in this case. Not only does this interpretation comport with the objection's purpose—limiting document production to "admissible" materials—but when asked about the letter at oral argument, counsel for BATCo stated, "I don't think it's inconsistent with the foreign objection." He went on to concede, "If BATCo did undertake a marketing plan for cigarettes that were to be sold in the United States as well as others, BATCo wouldn't take the position that that was an activity for a foreign market and not produced [*sic*]."

The district court concluded that given its interpretation of the foreign objection, that objection did not apply to the Foyle memorandum because "by providing legal advice about document management policies undertaken to minimize litigation risks, particularly in the United States, the Memorandum also addresses the United States' market." 321 F. Supp. 2d at 92. We agree, although we think it a closer case than did the district court. The Foyle memorandum raised concerns about litigation in the United States. "'BATCO has a more general concern that any disclosures in Australia could be used by plaintiffs who are interested in bringing product liability actions against any member of the BAT Group,' even

in the United States." *Cowell*, [2002] V.S.C.A. 197, ¶ 87 (quoting the memorandum). While the activity at issue in the memorandum—the document-retention policy at Wills—involved only Australia, the memorandum suggests that this activity was undertaken to reduce the risks that BATCo research documents would fall into the hands of plaintiffs in the United States, as well as plaintiffs in Australia and other countries. The Foyle memorandum thus relates sufficiently to the U.S. market and core issues in this case that it falls outside the scope of the foreign objection.

## *The Sanction*

Because none of BATCo's three objections applies to the Foyle memorandum, BATCo should have either produced or logged the document. BATCo's failure to log, however, does not necessarily trigger waiver of privilege as a sanction. As we stated in *Philip Morris II*, "[w]aiver is not automatic, particularly if the party reasonably believed that its objections applied to the document. 'As the federal rules, case law and commentators suggest, waiver of privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith.'" 347 F.3d at 954 (quoting *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995)). The district court found that BATCo lacked reasonable belief that its objections applied to the Foyle memorandum, a decision we review for abuse of discretion. *Cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-02 (1990) (determining that abuse of discretion is the proper standard in the Rule 11 context for reviewing a district court's finding as to what constitutes reasonable inquiry).

In its analysis, the district court focused almost exclusively on BATCo's delay in raising the objections. According to the court:

> Upon [learning about the Foyle memorandum] in March, 2002, the government made repeated requests for production of the Memorandum. During the next two months, despite its obligation to produce or log the Memorandum, BATCo did neither

> and never raised any of its three current Objections as a basis for its refusal to do so. Only when the document was the subject of a teleconference with the Court, at least two teleconferences with the Special Master, and two Reports and Recommendations, did BATCo finally proffer these three Objections as a basis for refusing to produce or log the Foyle Memorandum.... [T]his Court cannot conclude that BATCo's behavior was simply that of a litigant withholding a document based upon a reasonable belief that it was covered by these Objections.

321 F. Supp. 2d at 93. Although a party's failure to raise objections in a timely manner may well justify an inference that, rather than reasonably believing an objection applied, the party has simply come up with a post hoc rationale for withholding a document, we have two problems with the district court's reliance on delay in this case.

To begin with, we read the record quite differently from the district court. The government first specifically requested the Foyle memorandum in mid-April, not—as the district court stated, *see* 321 F. Supp. 2d at 93 n.7—in March. Moreover, BATCo delayed less in raising its objections than the district court thought. As we noted in *Philip Morris II*, BATCo first referenced the Guildford objection in the initial teleconference with the court and the other two objections in a teleconference with the Special Master two days later. 347 F.3d at 954-55. Indeed, in the initial teleconference, the district court explicitly gave the parties the right to relitigate its ruling before the Special Master. *See id.*

Second, and most critically for this appeal, our two prior opinions in this case stand for the proposition that BATCo raised its objections in a timely fashion. *See Philip Morris I*, 314 F.3d at 621 (stating that "there is no question that the objections were timely raised"); *Philip Morris II*, 347 F.3d at 954-55 (remanding for the district court to address the merits of the three objections). Accordingly, the district court's waiver analysis should have turned exclusively on whether

BATCo had reason to believe its objections applied, not on when BATCo raised the objections.

Taking timeliness off the table, we see no other basis in the district court's opinion for concluding that BATCo lacked reasonable belief that at least one of its objections applied to the Foyle memorandum. While the plain language of the Guildford and third-party objections might justify a conclusion that BATCo acted unreasonably in invoking them, we cannot say the same about the foreign objection. As we discussed earlier, the objection is far from clear and BATCo's interpretation finds support in the objection's text. Moreover, the district court identified no extrinsic factors—such as how BATCo applied the objection in relation to the production of other documents—that might have suggested that BATCo invoked the objection unreasonably. The government argues that BATCo changed its interpretation of the foreign objection over the course of the litigation, but because the government failed to make this point to the district court, it may not do so here. *See, e.g., United States v. Hylton*, 294 F.3d 130, 135-36 (D.C. Cir. 2002) (noting that, absent exceptional circumstances, arguments not made to the district court are forfeited). Given that the district court had no basis beyond its reliance on delay for believing that BATCo unreasonably invoked the foreign objection, we conclude that the court should not have imposed privilege waiver as a sanction. As we have said, waiver of attorney-client privilege is a serious sanction that requires, at the very least, a showing that BATCo failed to log the memorandum without reasonable belief that its objections applied to it. *See Philip Morris II*, 347 F.3d at 954.

We reverse and remand so that BATCo can log the Foyle memorandum, and the government may, if it chooses, challenge the merits of BATCo's privilege claim.

*So ordered.*