Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 22, 2004        Decided July 27, 2004

No. 03-5329

IN RE: GORDON R. ENGLAND, SECRETARY OF THE NAVY, *ET AL.*,
PETITIONERS

———

Consolidated with
03-5333, 03-5334

———

On Petition for Writ of Mandamus and
Appeals from the United States District Court
for the District of Columbia
(No. 00cv00566)
(No. 99cv02945)

———

*Robert M. Loeb*, Attorney, U.S. Department of Justice, argued the cause for petitioners/appellants. With him on the briefs were *Peter D. Keisler*, Assistant Attorney General, *Roscoe C. Howard, Jr.*, U.S. Attorney, and *Marleigh D. Dover*, Attorney.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Arthur A. Schulcz, Sr.* argued the cause and filed the brief for respondents/appellees.

Before: GINSBURG, *Chief Judge*, and GARLAND and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*: Navy chaplains, like other Navy officers, are recommended for promotion by "selection boards" consisting of superior officers who meet and discuss the relative merits of candidates for promotion. The federal statute establishing the procedures for such selection boards, which applies to all the armed services, provides that board proceedings "may not be disclosed to any person not a member of the board," 10 U.S.C. § 618(f), and board members take an oath of confidentiality to implement this requirement. Certain current and former Navy chaplains and their particular endorsing agency, the Chaplaincy of Full Gospel Churches (CFGC), sued the Navy, alleging that it discriminates against chaplains affiliated with the CFGC in, among other things, promotion decisions. The chaplains and the CFGC sought to compel the Secretary of the Navy to release selection board members from their oath of confidentiality, to allow them to testify about selection board proceedings leading to the challenged decisions.

The district court ruled that Section 618(f) did not preclude disclosure of selection board proceedings through civil discovery, because Congress had not expressly addressed the question of such discovery in providing that board proceedings "may not be disclosed." The court accordingly ordered the Secretary to release selection board members from their oath. We reverse and hold that Section 618(f) bars the disclosure through civil discovery of promotion selection board proceedings.

## I. Background

### A. The History and Organization of Navy Chaplains

In November 1775, the Continental Congress adopted the first regulations to govern the fledgling Continental Navy.

*See* Rules for the Regulation of the Navy of the United Colonies of North America (Nov. 28, 1775), *reprinted in relevant part in* 1 Clifford M. Drury, *The History of the Chaplain Corps, United States Navy* 3 (Bureau of Naval Personnel 1984). Although those regulations did not expressly create a chaplain position, Article 2 provided that "[t]he Commanders of the ships of the thirteen United Colonies, are to take care that divine service be performed twice a day on board, and a sermon preached on Sundays, unless bad weather or other extraordinary accidents prevent." *Id.* These duties often fell to the captain himself or a designee: only two chaplains were known to have served in the Continental Navy during the Revolutionary War, and the Navy limited the number of chaplains on active duty to nine until 1842 and to 24 from then until 1914. Drury, *supra*, at 5, 62.

Early chaplains were responsible for educating midshipmen and sailors in addition to their religious duties. The Navy placed great emphasis on the chaplains' role as teacher, selecting them "more for their teaching ability than for their experience or training as ministers." *Id.* at 18. Indeed, the first "naval academy" was established 200 years ago at the Washington Navy Yard by Chaplain Robert Thompson, who taught midshipmen mathematics and navigation. *Id.* at 18–20. The success of that academy led to the establishment of the United States Naval Academy at Annapolis, Maryland in 1845.

From those beginnings, the Navy Chaplain Corps has grown with the service to over 800 strong. It is the responsibility of Navy chaplains to "provide for the free exercise of religion for all members of the [Navy and Marine Corps], their dependents, and other authorized persons." Directive No. 1304.19, Appointment of Chaplains for the Military Services ¶ 3 (Dep't of Def. Sept. 18, 1993) (Directive). The Navy chaplain's mission is to accommodate the religious needs of sailors and Marines by providing religious services, counseling, and support. *See* Marine Corps Warfighting Publication 6-12, *Religious Ministry Support in the United States Marine Corps* 1-4, 1-5 (Dec. 12, 2001). In addition to this religious ministry, Navy chaplains also provide ethics instruc-

tion and critical incident debriefings, and advise commanders on religious, moral, and ethical issues. *Id.* at 1-5.

A Navy chaplain's role within the service is "unique," involving simultaneous service as clergy or a "professional representative[ ]" of a particular religious denomination and as a commissioned naval officer. OPNAVINST 1730.1, *Chaplains Manual* 1-2–1-3 (Dep't of the Navy Oct. 3, 1973). A chaplain must satisfy not only the normal physical and educational requirements to become a commissioned officer, but also must have a graduate level theology degree or equivalent and an ecclesiastical endorsement — official notice from a faith group endorsing agency that a candidate "is professionally qualified to *represent* that faith group within the military Chaplaincy." Chaplain Candidate Program Officer Handbook Glossary; *see* Directive ¶¶ 5.1–5.2. Ecclesiastical endorsement must be maintained throughout a chaplain's career; withdrawal of ecclesiastical endorsement at any point in a chaplain's career could result in separation from the Navy. Directive ¶ 5.1.4.

The Navy categorizes chaplains into four general religious categories or "faith groups" according to similarities in religious denominations: Roman Catholic, Liturgical Protestant, Non-Liturgical Protestant, and Special Worship. Liturgical Protestant primarily includes those protestant denominations that trace their origins to the Protestant Reformation and whose religious services are characterized by a set liturgy or order of worship, including the Lutheran, Episcopal, Methodist, and Presbyterian denominations. CFGC Second Am. Compl. ¶ 12(a) (CFGC Compl.). Non-Liturgical Protestant refers to protestant denominations "without a formal liturgy or order in their worship service" whose clergy do not wear religious dress during services, comprising the Baptist, Evangelical, Pentecostal, Bible, and Charismatic churches. *Id.* ¶ 12(b). The Special Worship category includes the Christian Orthodox, Jewish, Muslim, and Mormon faiths. Appellants' Br. at 5.

## B. The Personnel System

The Navy uses the same personnel system for all officers, including chaplains. That system seeks to manage officers'

careers to provide the Navy with the best qualified personnel through three critical personnel decisions: (1) promotion; (2) continuation on active duty; and (3) selective early retirement. A naval officer must be recommended by a promotion selection board to advance in rank from lieutenant (junior grade) through rear admiral (lower half). *See* 10 U.S.C. § 611(a). Continuation on active duty decisions occur when the needs of the Navy require the selection of certain officers — otherwise subject to discharge or retirement for failing to be promoted to the next rank — to continue on active duty for an established period of time. *See id.* § 637(a)(1), (d). Conversely, selective early retirement decisions generally involve the selection of officers in the grade of captain who were passed over for promotion two or more times for involuntary, early retirement. *Id.* § 638(a)(1).

Each of these personnel decisions involves a selection board comprised of naval officers who deliberate, make selections, and then submit their recommendations to the Secretary of the Navy. Promotion selection boards are convened under 10 U.S.C. § 611(a); continuation on active duty and selective early retirement boards are convened under 10 U.S.C. § 611(b). Selection boards must consist of five or more active-duty naval officers who "must be serving in a grade higher than the grade of the officers under consideration by the board, except that no member of a board may be serving in a grade below ... lieutenant commander." 10 U.S.C. § 612(a)(1). At least one member of the board must be from the category being considered; thus, if a selection board is considering chaplains, at least one board member must be a chaplain. *See id.* § 612(a)(2)(A).

Promotion selection boards may only consider an eligible officer's official military personnel file and the selection board "precept" issued to the board by the Secretary of the Navy. *See* 10 U.S.C. § 615(a), (b). A precept is the Secretary's official guidance to the board, consisting of: (1) the maximum number of officers that the board may recommend for promotion, (2) "information or guidelines relating to the needs of the [Navy] for officers having particular skills," and (3) applicable guidelines from the Secretary of Defense. *Id.*

§ 615(b). A promotion selection board considers these items and recommends those officers "whom the board . . . considers best qualified for promotion." *Id.* § 616(a).

The promotion board reports its recommendations to the Secretary, 10 U.S.C. § 617(a), who takes action on the report in accordance with Section 618. If the Secretary "determines that the board acted contrary to law or regulation or to guidelines furnished the board under Section 615(b)," the Secretary must return the board's recommendations with a written explanation for further proceedings. *Id.* § 618(a)(2). The Secretary otherwise reviews the board's recommendations and adopts or modifies the list, and then forwards it to the President through the Chairman of the Joint Chiefs of Staff and the Secretary of Defense. *See id.* § 618(b), (c). The President ultimately appoints recommended officers for promotion to the next rank, subject to confirmation by the Senate for promotions above the rank of lieutenant (junior grade). *See id.* § 624.

The other statutory selection boards — continuation on active duty and selective early retirement — are convened under Section 611(b) and have somewhat different procedures. The Secretary has final authority over these boards, and no Presidential or Senatorial action is involved. In addition, unlike the situation with promotion boards, there are no statutory guidelines that dictate what information other statutory selection boards may consider.

By statute, each member of a selection board must take an oath to perform his duties "without prejudice or partiality and having in view both the special fitness of officers and the efficiency of [the Navy]." 10 U.S.C. § 613. As noted, members of promotion selection boards may not disclose the proceedings of the board to anyone not a member of the board, "[e]xcept as authorized or required by [Section 618]." *Id.* § 618(f). Navy regulations also require all selection board members to take an oath to "not divulge the proceedings of this board except as authorized or required by the Secretary of the Navy or higher authority." Mem. in Support of Mot. for an Order Requiring Def. Secretary of the

Navy to Release Personnel Associated with Chaplain Promotion Boards from their Oath Not to Disclose Promotion Board Proceedings (Oct. 29, 2002) (Pls.' Mot.), Ex. 1, Oaths; *see also* SECNAV Instruction 1420.1A, Promotion and Selective Early Retirement of Commissioned Officers on the Active Duty Lists of the Navy and Marine Corps ¶ 12(f) (Dep't of the Navy Jan. 8, 1991) ("Each member . . . shall swear or affirm that he or she will not disclose the proceedings or recommendations of the board except as authorized or required by SECNAV or higher authority.").

Section 618(f) was enacted as part of the Defense Officer Personnel Management Act (DOPMA), Pub. L. No. 96-513, 94 Stat. 2835 (1980) (codified in scattered sections of 10 U.S.C.). Through DOPMA, Congress sought to update the existing statutory framework for military promotions established by the Officer Personnel Act of 1947, Pub. L. No. 80-381, 61 Stat. 795, by eliminating the services' individual promotion systems in favor of "a single, permanent promotion system under a single, applicable statutory grade table and under laws that would be the same for each service." S. Rep. No. 96-375, at 3 (1979). Section 618(f) codified in a uniform manner the established practice in the individual services of barring the disclosure of selection board proceedings. *See*, *e.g.*, *Brenner v. United States*, 202 Ct. Cl. 678, 686 (Ct. Cl. 1973) ("The proceedings of selection boards are secret.") (Navy); *Sanders v. United States*, 594 F.2d 804, 815 (Ct. Cl. 1979) (en banc) ("Selection board proceedings are secret") (Air Force); Army Regulation 624-100, Promotion of Officers on Active Duty ¶ 2-8 (Oct. 20, 1975).

C. **Procedural History**

Plaintiffs — current and former Non-Liturgical Protestant chaplains and their endorsing agency, the Chaplaincy of Full Gospel Churches (CFGC) (collectively "Chaplains") — filed two separate suits against the Secretary of the Navy, other Navy officials, and the Navy (collectively "Navy"), alleging that "the Navy has established, promoted, and maintained religious quotas and other discriminatory practices in the Navy Chaplain Corps in violation of the First and Fifth

Amendments." *Chaplaincy of Full Gospel Churches v. John-son*, 217 F.R.D. 250, 253 (D.D.C. 2003) (*CFGC*); *see also Adair v. England*, 217 F. Supp. 2d 7, 8 (D.D.C. 2002). The district court subsequently consolidated the cases for purposes of all pretrial motions. *Adair*, 217 F. Supp. 2d at 8. The Chaplains allege that the Navy's discriminatory practices favor Catholic and Liturgical Protestant chaplains to the detriment of Non-Liturgical Protestant chaplains. *See* CFGC Compl. ¶¶ 3, 56–63.

As pertinent here, the Chaplains allege that the Navy discriminates against chaplains endorsed by the CFGC through promotions and retention. *See CFGC*, 217 F.R.D. at 253. The Chaplains claim that this discrimination is manifested in the policies for and operation of promotion and other statutory selection boards, permitting "religious bias" and "denominational issues" — criteria not related to career performance — to interfere with the proper selection of the best-qualified chaplains for advancement. Adair Class Action First Am. Compl. ¶ 50 (Adair Compl.); *see CFGC*, 217 F.R.D. at 253–54. The Chaplains allege that the Navy: (1) provided promotion boards with each candidate's religious denomination, CFGC Compl. ¶ 69; (2) used religious quotas and denominational criteria for promotion and forced retirement selections, Adair Compl. ¶ 50; (3) denied promotions based upon ideological criteria, *see id.*; and (4) "stacked" promotion and other statutory selection boards with Catholic and Liturgical Protestant chaplains, *id.* ¶ 47.

The Chaplains requested that the Secretary release board members from their oath of confidentiality to allow them to testify; the Secretary declined to do so. The Chaplains thereupon filed a motion to compel discovery of selection board proceedings, seeking to depose board members. *See* Pls.' Mot. The Navy argued that 10 U.S.C. § 618(f) barred disclosure of selection board deliberations. The district court disagreed and granted the Chaplains' motion, holding that "[b]ecause section 618(f) does not contain specific language barring discovery, and because of the circuit's emphasis on providing litigants full access to relevant information, the court concludes that section 618(f) does not create an absolute

or qualified privilege barring discovery of selection-board proceedings." 217 F.R.D. at 260. The Navy filed an interlocutory appeal and a petition for mandamus, which we consolidated.

## II. Appellate Jurisdiction

This court has appellate jurisdiction over "final decisions" of the district court. 28 U.S.C. § 1291; *DSMC, Inc. v. Convera Corp.*, 349 F.3d 679, 682 (D.C. Cir. 2003). Discovery orders are accordingly generally appealable only upon a final decision in the case, not on an interlocutory basis. *McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346, 353 (D.C. Cir. 1995). The Navy nonetheless argues that we have interlocutory jurisdiction to hear its appeal under the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

"The collateral order doctrine is best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a 'practical construction' of it." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (quoting *Cohen*, 337 U.S. at 546). The collateral order doctrine allows appeals from the "small category" of decisions "that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42 (1995); *see United States v. Philip Morris Inc.*, 314 F.3d 612, 617 (D.C. Cir. 2003).

1. It is undisputed that the district court conclusively ordered the Navy to release board members from their oaths not to disclose board proceedings. The district court considered and rejected all the Navy's arguments opposing the motion to compel, and, with respect to the question on appeal, concluded that "section 618(f) does not create an absolute or qualified privilege barring discovery of selection-board proceedings." *CFGC*, 217 F.R.D. at 260. The first requirement is satisfied.

2. To satisfy the second requirement under the collateral order doctrine, the Navy must show that "appellate review will resolve an *important* issue completely *separate* from the merits of the action." *Philip Morris*, 314 F.3d at 617 (emphases added). Determining whether Section 618(f) bars discovery in this case does not require this court to consider the merits of the Chaplains' constitutional claims; the separability prong of the second requirement is clearly satisfied.

"Importance" is a more subjective inquiry. The Supreme Court has explained that this inquiry requires a "judgment about the value of the interests that would be lost through rigorous application of [the] final judgment requirement," and that " 'important' in *Cohen*'s sense [means] being weightier than the societal interests advanced by ordinary operation of final judgment principles." *Digital Equip.*, 511 U.S. at 878–79. This court has explained that an issue is important under *Cohen* "if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule." *Philip Morris*, 314 F.3d at 617 (quoting *In re Ford Motor Co.*, 110 F.3d 954, 959 (3d Cir. 1997)).

In *Philip Morris*, we analyzed whether the collateral order doctrine provided appellate jurisdiction to hear an interlocutory appeal challenging denial of an attorney-client privilege claim. The court held that the attorney-client privilege was "important" under *Cohen*, concluding that "the institutional benefits of allowing interlocutory review of attorney-client privilege claims outweigh the costs of delay and piecemeal review that may result." *Philip Morris*, 314 F.3d at 618. The court explained that the privilege " 'encourage[s] full and frank communication between attorneys and their clients' " and "promotes 'broader public interests in the observance of law and administration of justice.' " *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); alteration in *Philip Morris*). Those "important institutional interests" would be "eviscerate[d]" by an erroneous privilege ruling, underscoring the importance of interlocutory review. *Id.*

The Navy argues that Section 618(f) similarly creates a privilege that protects the deliberations of military promotion boards from disclosure. According to the Secretary of the Navy, "[f]ree, uninhibited, and candid deliberations by selection boards are ... vital to the effective functioning of the selection board process," and disclosure of board proceedings would "severely undermine the ability ... of the Navy to effectively operate its promotion and selective early retirement system." Decl. of Gordon R. England, ¶ 9 (England Decl.). The proper application of Section 618(f) therefore implicates institutional interests in the proper administration of the armed forces.

The statutory nature of the claimed privilege also supports a finding of importance under *Cohen*. In *Digital Equipment*, the Supreme Court suggested that "[w]here statutory and constitutional rights are concerned," it is easier to conclude that they are "weightier than the societal interests advanced by the ordinary operation of final judgment principles." 511 U.S. at 879. We cannot say that the importance of the interests assertedly protected by Congress through Section 618(f) should be subordinated to the general interest in avoiding litigation delay and piecemeal review. If it is correct about the critical nature of the protection from disclosure provided by Section 618(f), the Navy should not lose the benefit of that protection prior to appellate review.

3. To satisfy the final requirement for invoking the collateral order doctrine, the appellant must show that the district court's order "will be effectively unreviewable on appeal from a final judgment." *Philip Morris*, 314 F.3d at 617. In *Philip Morris*, this court determined that a party's claim of attorney-client privilege would be "effectively unreviewable" because disclosure of privileged material "would mak[e] the issue of privilege effectively moot" on appeal. 314 F.3d at 619. "Disclosure followed by appeal after final judgment is obviously not adequate in [privilege] cases — the cat is out of the bag." *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998).

So too here. The right at issue — the Navy's claim of statutory privilege — would be destroyed if board members were compelled to testify; there would be no privilege to protect on appeal from final judgment. "It would be impossible for [this] court to sort out and redress the harm caused by the incorrect disclosure." *Philip Morris*, 314 F.3d at 619.

Having found that this interlocutory appeal satisfies the *Cohen* requirements, we hold that the collateral order doctrine provides appellate jurisdiction to review the district court's order.[1] We now turn to the merits of the Navy's claim of statutory privilege.

### III. Merits

The Federal Rules of Civil Procedure encourage the exchange of information through broad discovery. Federal Rule of Civil Procedure 26(b)(1) authorizes "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." The district court concluded that the selection board proceedings at issue in this case are relevant to the Chaplains' claims, and thus are discoverable under Rule 26(b)(1). The Navy argues, however, that Section 618(f) creates a statutory privilege barring the disclosure of selec-

---

[1] In a related case, the Ninth Circuit summarily dismissed for lack of jurisdiction a similar appeal from an order requiring disclosure, citing *Bank of America v. National Mortgage Equity Corporation*, 857 F.2d 1238 (9th Cir. 1988). *Wilkins v. United States*, No. 04-55046 (9th Cir. Apr. 27, 2004) (unpublished order). That dismissal does not conflict with our finding of jurisdiction here because the case our sister circuit relied upon — *Bank of America* — did not consider whether the collateral order doctrine provided appellate jurisdiction. *See Bank of America*, 857 F.2d at 1239 (determining whether court had appellate jurisdiction under an exception for third parties aggrieved by a discovery order). On the same day that it issued the order dismissing the Government's appeal, the Ninth Circuit also ordered that the Government's parallel petition for mandamus be referred to a merits panel. *See United States v. Wilkins*, No. 04-70709 (9th Cir. Apr. 27, 2004) (unpublished order). Disclosure in *Wilkins* has been stayed pending resolution of that petition.

tion board proceedings. Although the terms of a statute should be strictly construed "to avoid a construction that would suppress otherwise competent evidence," *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218 (1961), if there is a valid statutory privilege, then "information may be withheld, even if relevant to the lawsuit and essential to the establishment of plaintiff's claim." *Baldridge v. Shapiro*, 455 U.S. 345, 360 (1982).

1. We begin with the plain language of the statute in question. "It is well established that 'when the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.'" *Lamie v. United States Tr.*, 124 S. Ct. 1023, 1030 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). Section 618(f) provides, in full:

> Except as authorized or required by this section, proceedings of a selection board convened under section 611(a) of this title may not be disclosed to any person not a member of the board.

This is the language of command — "may not be disclosed" — in a context in which commands are expected to be obeyed. There is no inherent ambiguity in the phrase "may not be disclosed" that would justify departing from those plain terms pursuant to a judicially-crafted exception.

That conclusion is fortified by the fact that Congress provided an express exception to the otherwise categorical ban on disclosure. The opening clause of Section 618(f) provides an exception for disclosures "authorized or required" by Section 618 itself. In other words, the drafters of Section 618(f) wrote the ban on disclosure in such broad and absolute terms that they felt the need to specify that board proceedings *could* be disclosed in connection with the very reason you have them — to submit recommendations to the Secretary of a military department, the Secretary of Defense, and ultimately the President for action under Section 618.

Section 618 also directs the Secretary of a military department to review the board reports "to determine whether the board has acted contrary to law or regulation or to guidelines furnished the board." 10 U.S.C. § 618(a)(1). A Department of Defense Instruction accordingly permits the Secretary of a military department to release board members from the confidentiality requirements if "the integrity of the board's proceedings has been affected by improper influence of senior military or civilian authority, misconduct by the board president or a member, or any other reason." Instruction 1320.14, Commissioned Officer Promotion Program Procedures ¶ 6.2.1.3 (Dep't of Def. Sept. 24, 1996); *accord id.* ¶¶ 6.2.2.5, E4.1.6. Contrary to the Chaplains' contention, the fact that the Secretary of the Navy exercised this authority in connection with Inspector General inquiries in 1997 and 1998 does not support implying an additional exception for civil discovery. The statute makes no provision for disclosure pursuant to the Federal Rules of Civil Procedure, even as it does for disclosure pursuant to Section 618 itself, and we are reluctant to imply an additional exception for that purpose. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 109 (1980) (declining to imply an exception to Consumer Product Safety Act restrictions on disclosure of accident reports for disclosures under FOIA; "[i]f Congress had intended to exclude FOIA disclosures from [the statutory restrictions] it could easily have done so explicitly . . . as it did with respect to the other listed exceptions. . . . We are consequently reluctant to conclude that Congress' failure to include FOIA requests within the exceptions . . . was unintentional."). "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others." *United States v. Johnson*, 529 U.S. 53, 58 (2000); *see also Detweiler v. Pena*, 38 F.3d 591, 594 (D.C. Cir. 1994) ("Where a statute contains explicit exceptions, the courts are reluctant to find other implicit exceptions.").

"[W]here the terms of a statute are unambiguous, judicial inquiry is complete," *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 642 (1990), and resort to "the more controversial realm of legislative history" is unnecessary. *Lamie*, 124 S. Ct. at 1031.

We find it "instructive," however, *id.* at 1033, to note that such history as there is fully comports with our plain language reading, and that nothing in that history remotely suggests that Congress intended an unexpressed exception to the ban on disclosure for civil discovery.

Disclosure of selection board proceedings in civil discovery would certainly undermine, if not totally frustrate, the purpose of Section 618(f). As the Secretary of the Navy explained in his declaration, "[s]election board members will be less likely to engage in frank and open discussion if such discussions will be open to public scrutiny." England Decl., ¶ 9. If board members knew that candidates passed over for promotion could gain access to board proceedings, that would clearly inhibit frank assessment of candidates' relative strengths and weaknesses. As Secretary England explained:

> [D]etermining which officers are best qualified for promotion from a pool of many fully qualified candidates involves inherently difficult and subjective evaluations. . . . Release of information regarding these proceedings to the public will severely undermine the ability of the Department of the Navy to effectively operate its promotion and selective early retirement systems.

*Id.*

2. The Supreme Court has addressed the question of whether broad, statutory bans on disclosure should be applied according to their terms, when doing so interferes with a civil litigant's effort to obtain discovery of relevant material under Federal Rule of Civil Procedure 26. In *Baldridge v. Shapiro*, 455 U.S. at 348–52, two municipalities sued the Department of Commerce, seeking to obtain from the Census Bureau raw census data — including individual respondents' questionnaires — to challenge the results of the 1980 census. Section 8(b) of the Census Act, 13 U.S.C. § 8(b), provided in relevant part that "the Secretary [of Commerce] may furnish copies of tabulations and other statistical materials which do not disclose information reported by, or on behalf of, any particular respondent." Section 9(a) of the Act, 13 U.S.C. § 9(a), provided that:

> Neither the Secretary, nor any other officer or employee of the Department of Commerce or bureau or agency thereof, may, except as provided in section 8 of this title —
>
> . . .
>
> (3) permit anyone other than the sworn officers and employees of the Department or bureau or agency thereof to examine the individual reports.

The Court recognized that the discovery rules "encourage open exchange of information," and quoted the admonition in *St. Regis Paper* to avoid construing statutes to suppress otherwise competent evidence. 455 U.S. at 360. The Court nevertheless held that the "unambiguous language of the confidentiality provisions," *id.* at 355, barred discovery of the protected information:

> Congress, of course, can authorize disclosure in executing its constitutional obligation to conduct a decennial census. But until Congress alters its clear provisions under §§ 8(b) and 9(a) of the Census Act, its mandate is to be followed by the courts.

*Id.* at 362.

The Court noted that Congress's purpose in barring disclosure was to promote the success and accuracy of the census by assuring the public that responses would be kept confidential, and that "[d]isclosure by way of civil discovery would undermine the very purpose of confidentiality contemplated by Congress." *Id.* at 361. The Constitution expressly authorizes Congress to conduct a census "as they shall by Law direct," U.S. CONST. art. I, § 2, cl. 3, and the Court concluded that Congress's "wisdom" in barring all disclosure of individual information "is not for us to decide in light of Congress' 180 years' experience with the census process." *Id.*

3. The district court took a different approach here and declined to apply the plain language of Section 618(f), because while Congress said board proceedings "may not be disclosed," it did not say board proceedings may not be disclosed *in civil discovery*. *See CFGC*, 217 F.R.D. at 260 ("section

618(f) does not contain specific language barring discovery"). The Supreme Court has repeatedly rejected such an approach to statutory construction as a general matter. *See, e.g.*, *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 689 (2001) (" 'the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.' ") (quoting *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985))); *accord Consumer Elecs. Ass'n v. FCC*, 347 F.3d 291, 298 (D.C. Cir. 2003) ("[T]he Supreme Court has consistently instructed that statutes written in broad, sweeping language should be given broad, sweeping application."). The district court relied for the opposite approach upon our cases stating that "general statutory bans on publication do not bar limited disclosure in judicial proceedings, including court-supervised discovery," *Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987), and noting that "where Congress thought it necessary to protect against court use of records it has expressly so provided by specific language." *Freeman v. Seligson*, 405 F.2d 1326, 1351 (D.C. Cir. 1968); *see also Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1343 (D.C. Cir. 1984) (quoting *Freeman*).

The district court seriously overread those precedents. In *Laxalt*, for example, we held that the Privacy Act did not prohibit disclosure of protected material in discovery, but the provision in question expressly *permitted* disclosure "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11) (1982); *see Laxalt*, 809 F.2d at 887 n.7. We specifically noted that fact in concluding that the Privacy Act did not trump the normal discovery rules. *See Laxalt*, 809 F.2d at 889. This holding is hardly precedent for overriding a categorical *prohibition* on disclosure of the sort at issue here.

*Friedman* and *Freeman* considered different versions and clauses of Section 8(a) of the Commodities Exchange Act (CEA), governing investigative files of the Secretary of Agriculture and, later, the Commodity Futures Trading Commission (CFTC). In each case, we ruled that the provision in

question did not bar civil discovery. In *Friedman*, however, the clause simply provided that the CFTC "*may* withhold from public disclosure any data or information concerning or obtained in connection with any pending investigation of any person." 7 U.S.C. § 12(a) (emphasis added). "May withhold" is not tantamount to "may not be disclosed."

In *Freeman*, the clause at issue provided that the Secretary of Agriculture "may publish" the results of investigations and statistical information of interest to the public, "except data and information which would separately disclose the business transactions of any person and trade secrets or names of customers." *See* 405 F.2d at 1340–41 (emphasis omitted; quoting statute). The majority held that disclosure in civil discovery was not "publishing" of the sort prohibited by this language; Congress was concerned with "widespread dissemination of information not otherwise available to the public, and not with disclosure in judicial proceedings." *Id.* at 1349. Here, Section 618(f) does not merely prohibit "publication," it categorically bars mere *disclosure* to anyone not a member of the promotion selection board.[2]

---

[2] As the district court recognized, *see CFGC*, 217 F.R.D. at 258 n.9, *St. Regis Paper*, *supra*, is even further afield. The provision of the Census Act at issue in that case precluded disclosure by government officials of certain information; the question was whether that provision should be construed to protect *private* entities from turning over the same information in response to civil discovery. *St. Regis Paper*, 368 U.S. at 215–17. The Court's statement that it should "avoid a construction that would suppress otherwise competent evidence unless the statute, strictly construed, requires such a result," *id.* at 218, was made in the course of rejecting an argument for expanding the reach of a statutory privilege beyond its terms. The Court declined to do so, noting that "we cannot rewrite the Census Act." *Id.*

The Chaplains also seek support for their clear statement rule from *Webster v. Doe*, 486 U.S. 592, 603 (1988) ("where Congress intends to preclude judicial review of judicial claims, its intent to do so must be clear"). Section 618(f), however, does not preclude judicial review of the Chaplains' claims, and the government has not argued that it does. As the government recognizes, "plaintiffs here

4.  In *Baldridge*, the Court noted that a conclusion that a statutory privilege exists "shields the requested information from disclosure despite the need demonstrated by the litigant." 455 U.S. at 362; *see id.* at 360 ("If a privilege exists, information may be withheld, even if relevant to the lawsuit and essential to the establishment of a plaintiff's claim."). As the Supreme Court reiterated this past Term:

> Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from "deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill."

*Lamie*, 124 S. Ct. at 1032 (quoting *United States v. Locke*, 471 U.S. 84, 95 (1985)). As in *Baldridge*, we accordingly apply the bar on disclosure as written, and conclude that it applies to block civil discovery of promotion selection board proceedings in civil litigation.

5.  Section 618(f) applies to "proceedings of a selection board convened *under section 611(a)* of this title." 10 U.S.C. § 618(f) (emphasis added). Section 611(a) provides authorization to convene "selection boards to recommend for promotion," while Section 611(b) provides authorization to convene the other statutory selection boards — continuation on active duty and selective early retirement — governed by Sections 637 and 638 respectively. 10 U.S.C. § 611(a), (b). There is no provision similar to Section 618(f) — barring disclosure of board proceedings — in Sections 637 and 638. 10 U.S.C. §§ 637, 638.

The plaintiffs' motion to compel was titled "Motion for an Order Requiring Defendant Secretary of the Navy to Release Personnel Associated with Chaplain Promotion Boards from their Oath Not to Disclose Promotion Board Proceedings." Although the title mentioned only promotion boards, the plaintiffs requested the court to compel the Secretary to

---

remain free to litigate their discrimination claims and to support them with other evidence." Reply Br. at 4.

release all members of "promotion, selective early retirement ('SER') and other statutory boards" from their oath of non-disclosure. Mem. in Support of Pls.' Mot. at 2. The plaintiffs used the term "selection board" throughout the motion to refer collectively to all types of selection boards. *See id.* at 7, 9; *see also id.* at 7 (citing to the complaint for allegations of impropriety in the selective early retirement process).

The Navy understood the plaintiffs to be seeking disclosure of promotion boards and selective early retirement boards. Defs.' Opp. to Pls.' Mot. at 5 n.3. Throughout the opposition, the Navy used the term "selection board" and did not distinguish among the different types of boards. *See id.* at 2, 6, 16, 17. The Navy argued that the district court should deny "discovery into the deliberations of Chaplain Corps promotion and selective early retirement ('SER') boards" because "10 U.S.C. § 618(f) absolutely bars disclosure of the Navy's selection board proceedings." *Id.* at 1. The district court also treated the plaintiffs' motion as seeking disclosure of all selection boards. *CFGC*, 217 F.R.D. at 254 n.4. Without distinguishing between the various boards, *see id.* at 258–60, the district court granted the plaintiffs' motion, holding that "section 618(f) does not create an absolute or qualified privilege barring discovery of selection-board proceedings." *Id.* at 260.

On appeal, neither of the parties distinguished between the different types of selection boards. The plaintiffs referred collectively to "selection boards," *see* Appellees' Br. at 37, 46, and also discussed both promotion selection boards, *see id.* at 40, 44, and selective early retirement boards, *id.* at 45, in their arguments against the existence of a statutory bar. The plaintiffs never argued that Section 618(f) by its terms did not apply to continuation on active duty or selective early retirement boards. The Navy similarly treated the selection boards collectively, arguing on appeal that Section 618(f) barred disclosure of both promotion and selective early retirement boards. Appellants' Br. at 17, 19–21.

We are frankly a bit surprised that throughout this dispute about whether a one-sentence statutory provision barred

disclosure of selection board proceedings, neither party pointed out that the statute, by its terms, applied only to certain types of selection board proceedings. This calls to mind what Judge Friendly described as Felix Frankfurter's "threefold imperative to law students" in his landmark statutory interpretation course: "(1) Read the statute; (2) read the statute; (3) read the statute!" Henry J. Friendly, *Benchmarks* 202 (1967). In any event, in reversing the district court's decision with respect to promotion selection boards, we do not decide whether proceedings of other statutory selection boards are discoverable. Neither the district court nor the parties addressed that as a distinct question, and analysis of it may turn in part on a proper understanding of Section 618(f). We accordingly vacate the district court's decision with respect to continuation on active duty and selective early retirement selection boards, and remand for further consideration. The parties should be afforded the opportunity to litigate, and the district court in the first instance to decide, whether continuation on active duty and selective early retirement board proceedings are protected, and to what extent, in light of our decision on the proper reading of Section 618(f).

## IV. The Chaplains' Pendent Claims

In their brief, the Chaplains present two additional issues, arguing that the district court erred in rejecting their claims that (1) Navy chaplains should be considered clergy, not naval officers, for the purpose of evaluating their constitutional claims, and (2) allowing Navy chaplains to sit on promotion boards violates the Establishment Clause of the First Amendment. *See* Appellees' Br. at 46, 52–55. Recognizing that these issues are not presently appealable by themselves, the Chaplains nonetheless urge this court to exercise pendent appellate jurisdiction to review them now.

"This court does not exercise pendent appellate jurisdiction frequently or liberally." *National R.R. Passenger Corp. v. Expresstrak*, 330 F.3d 523, 527 (D.C. Cir. 2003). Such jurisdiction may be appropriate only when (1) a "nonappealable order is 'inextricably intertwined' with the appealable order,"

or (2) review of the nonappealable order is " 'necessary to ensure meaningful review' " of the appealable order. *Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 679 (D.C. Cir. 1996) (quoting *Swint v. Chambers County Comm'n*, 514 U.S. at 51). No such considerations are present in this case. The Chaplains' constitutional claims — not even presented on a cross-appeal — are not intertwined with, nor necessary to ensure meaningful review of, the statutory privilege issue that is within our jurisdiction. We accordingly decline to consider them.

\* \* \*

We reverse the district court's decision with respect to promotion selection boards, vacate the district court's decision with respect to continuation on active duty and selective early retirement selection boards, and remand for further proceedings consistent with this opinion. The petition for mandamus is dismissed as moot.