**MDK, INCORPORATED, Appellant,**

v.

**MIKE'S TRAIN HOUSE, INCORPORATED, a Maryland Corporation, Plaintiff–Appellee,**

**Lionel Trains, Incorporated, a Michigan Corporation, Defendant–Appellee.**

**No. 93–2230.**

United States Court of Appeals, Fourth Circuit.

Argued April 13, 1994.

Decided June 22, 1994.

118

**ARGUED:** Peter M. Foley, Leboeuf, Lamb, Leiby & MacRae, Raleigh, NC, for appellant. Robert Joseph LaRocca, Kohn, Nast & Graf, P.C., Philadelphia, PA, for appellee.

**ON BRIEF:** M. Toler Workman, Leboeuf, Lamb, Leiby & MacRae, Raleigh, NC, for appellant.

Steven A. Asher, Kohn, Nast & Graf, P.C., Philadelphia, PA, Richard L. Wharton, Clark, Wharton & Berry, Greensboro, NC, for appellee.

Before RUSSELL, WILKINSON, and HAMILTON, Circuit Judges.

Dismissed by published opinion. Judge WILKINSON wrote the opinion, in which Judge RUSSELL and Judge HAMILTON joined.

## OPINION

WILKINSON, Circuit Judge:

The question before us is whether this court has jurisdiction to review a district court decision compelling a company to submit to discovery where it is not a party to the underlying litigation. Because we find that this nonfinal discovery order does not fall under the collateral order exception of *Cohen*

v. *Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), we dismiss the appeal for want of jurisdiction.

I.

This appeal traces its origins to a lawsuit filed in Michigan federal court. *See Mike's Train House, Inc. v. Lionel Trains, Inc.*, No. CA 93–60138 (E.D.Mich.). The Michigan litigation involves antitrust allegations in the model trains market. These trains come in a variety of sizes, or "gauges," including O gauge, HO gauge, and N gauge. Both parties to the Michigan litigation manufacture O gauge trains and related products, and the plaintiff in that case, Mike's Train House, is a former distributor for the defendant, Lionel Trains, Inc. Mike's alleges that when it decided to begin manufacturing O gauge trains on its own, Lionel sought an agreement with Mike's to restrict output. Mike's further alleges that its refusal to agree to those output restrictions led Lionel to terminate the distributorship. Mike's maintains that these actions constitute a misuse of monopoly power in violation of section two of the Sherman Act. *See* 15 U.S.C. § 2.

In response, Lionel contends that it is not a monopolist because its share of the total train market—which includes all gauges—is too small. Mike's, however, has contested Lionel's broad view of the market. It has attempted to prove that O gauge products constitute the relevant market and that Lionel monopolizes that market. To support this contention, Mike's has sought information from other model train manufacturers. The information was sought through subpoenas requesting business records regarding (1) annual sales revenues, (2) total annual revenue on a product by product basis, and (3) the costs of goods sold.

One of these subpoenas was served on MDK, Inc., a North Carolina manufacturer of O gauge products. MDK, arguing that the subpoena sought confidential commercial information and trade secrets, filed a motion in North Carolina federal district court to quash the subpoena.[1] A hearing on MDK's

---

1. The original motion requested that a subpoena by Lionel seeking information from MDK be

quashed as well. However, the scope of that subpoena has apparently been narrowed to the

motion was held before a magistrate judge in July 1993. The magistrate determined that Mike's was acting in good faith in seeking information from MDK. The magistrate further determined that Mike's had a critical need for the information because it would be used to determine the relevant market and the presence of monopoly power. The magistrate therefore concluded that the subpoena could be enforced and ordered the parties to negotiate an appropriate confidentiality order to safeguard the information subject to discovery. The magistrate also ordered Mike's to reimburse MDK for the costs it would incur in complying with the subpoena. This decision was subsequently upheld by the district court, and the parties proceeded to discuss the scope of the confidentiality order. MDK now appeals, claiming the rulings below inappropriately subject its vital business information to discovery.

## II.

■ As a threshold matter, we must determine whether this court has jurisdiction to review the decision below. Circuit courts may hear "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. This finality requirement is a "historic characteristic of federal appellate procedure," *Cobbledick v. United States*, 309 U.S. 323, 324, 60 S.Ct. 540, 540, 84 L.Ed. 783 (1940), that advances the important interest of avoiding piecemeal review of ongoing district court proceedings. *United States v. Nixon*, 418 U.S. 683, 690, 94 S.Ct. 3090, 3098, 41 L.Ed.2d 1039 (1974). Such piecemeal review would not only delay the ultimate resolution of disputes by spawning multiple appeals, *see Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S.Ct. 669, 673–74, 66 L.Ed.2d 571 (1981), it would also "undermine the independence of the district judge" in conducting court proceedings, *id.* The rule against appeal of interlocutory rulings thus serves twin purposes. It both avoids the "enfeebling [of] judicial administration" that comes with undue delay, *Cobbledick*, 309 U.S. at 325, 60 S.Ct. at 541, 84

L.Ed. 783, and preserves the primacy of the district court as the arbiter of the proceedings before it, *see Firestone*, 449 U.S. at 374, 101 S.Ct. at 673, 66 L.Ed.2d 571.

■ Consequently, appellate review will generally be limited to those decisions "which end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); *see Miller v. Simmons*, 814 F.2d 962, 964 (4th Cir.1987). Discovery orders generally do not meet this requirement. *Church of Scientology v. United States*, —— U.S. ——, —— n. 11, 113 S.Ct. 447, 452 n. 11, 121 L.Ed.2d 313 (1992); *Barrick Group, Inc. v. Mosse*, 849 F.2d 70, 72 (2d Cir.1988). Such orders "typically bespeak their own interlocutory character; they are necessarily only a stage in the litigation and almost invariably involve no determination of the substantive rights involved in the action." *United States v. Sciarra*, 851 F.2d 621, 627–28 (3d Cir. 1988). Indeed, the considerations underlying the rule against review of interlocutory orders apply with particular force in the discovery context because that process has a special potential for spawning rulings that aggrieved parties would seek to appeal. The process of turning over private—and often damaging—information to an adversary inevitably creates friction. The sheer number of discovery rulings and the myriad procedural requirements governing them, *see* Fed. R.Civ.P. 26–37, provide fertile soil for the growth of appealable orders. Allowing immediate appeal of the orders resolving discovery disputes would only disrupt and delay district court proceedings and clog the courts of appeals with matters more properly managed by trial courts familiar with the parties and their controversy. *See In re Insurers Syndicate for Joint Underwriting*, 864 F.2d 208, 210–11 (1st Cir.1988).

## III.

MDK nonetheless contends that the discovery ruling here is reviewable and advances two bases for appellate jurisdiction.

point where it is moot as far as MDK is concerned. The only issue before us, therefore, is

Mike's discovery request.

First, MDK argues that because Mike's seeks discovery of MDK's trade secrets, review of the discovery decision is proper at this time. Second, MDK maintains that the district court's decision constitutes a collateral order reviewable under the doctrine enunciated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We hold that neither of these rationales confer jurisdiction upon this court to review the order below.

## A.

■ MDK's position that orders mandating the discovery of trade secrets are appealable relies on the Tenth Circuit's holding in *Covey Oil v. Continental Oil Co.*, 340 F.2d 993 (10th Cir.1965). However, subsequent events have undermined that ruling, and the Tenth Circuit itself recognizes that "the Supreme Court has indirectly overruled the *Covey* exception making it no longer viable." *FTC v. Alaska Land Leasing, Inc.*, 778 F.2d 577, 578 (10th Cir.1985) (discussing *United States v. Ryan*, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971)).[2] The dangers of a trade secrets exception to the nonappealability of discovery orders should be apparent. A judicially created exception to nonappealability for categories of sensitive information is the quintessential slippery slope. Many parties faced with discovery requests are apt to regard the information sought as sensitive or confidential and seek, at a minimum, to delay its disclosure through an interlocutory trip to an appellate court. In addition, trade secrets have widely been held to be discoverable upon appropriate findings and with an appropriate protective order, *see Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 2813, 61 L.Ed.2d 587 (1979) (noting that there is no absolute privilege protecting trade secrets from discovery); *National Util. Serv., Inc. v. Northwestern Steel & Wire Co.*, 426 F.2d 222, 227 (7th Cir.1970) (same); *Duplan Corp. v. Deering*

*Milliken, Inc.*, 397 F.Supp. 1146, 1185 (D.S.C.1974) (same); 3 Roger M. Milgrim, *Milgrim on Trade Secrets* § 14.02[1][a] (1993) (same), and we see no reason to overturn the general rule of nonappealability with respect to them.

## B.

■ We are similarly unpersuaded that jurisdiction over this appeal is conferred by the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Cohen* recognized that a "small class" of "collateral" decisions may require review even where they do not conclude the litigation in question. *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225–26. In this circuit, an order will fall within this limited exception only if the "order conclusively determines the question in the trial court, resolves an important question independent of the subject matter of the litigation, is effectively unreviewable on appeal from a final judgment or so important that review should not wait upon final judgment, and presents a serious and unsettled question upon appeal." *Bever v. Gilbertson*, 724 F.2d 1083, 1085 (4th Cir.1984); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978). MDK claims that the district court's order meets the requirements of *Cohen* because it concludes the question of whether MDK will be forced to submit to discovery, and because once that discovery takes place, it will be too late for MDK to protect its information.

Such claims have rarely proved convincing, however, and courts have rather routinely declined to extend the collateral order doctrine to discovery rulings. *See In re Insurers Syndicate*, 864 F.2d at 210; *Bever*, 724 F.2d at 1087; *see also M.A. Mortenson Co. v. United States*, 877 F.2d 50, 51–52 (Fed.Cir. 1989) (holding orders imposing certain noncontempt discovery sanctions nonreviewable

---

**2.** For similar reasons we decline to rely on the Third Circuit's case, *Smith v. Bic Corp.*, 869 F.2d 194 (3d Cir.1989). Like *Covey*, that case creates an exception to the general rule that discovery orders are not appealable by allowing review of a district court's refusal to grant a protective order restricting dissemination of trade secrets. *See*

*Bic*, 869 F.2d at 198–99. However, as the Fifth Circuit noted, *Bic* runs contrary to the law of most other circuits, *see Texaco Inc. v. Louisiana Land & Exploration Co.*, 995 F.2d 43, 44 n. 4 (5th Cir.1993) (collecting cases), and we do not follow it here.

under *Cohen*); *In re Underwriters at Lloyd's,* 666 F.2d 55, 58 (4th Cir.1981) (same). We recognize, of course, that this case does not present the routine discovery dispute between two parties to a court proceeding. Despite the fact that MDK is not a party to the Michigan litigation, a North Carolina federal court has ordered it to turn over certain private business information to a competitor engaged in that litigation. We note also that some courts have found jurisdiction to review district court orders *quashing* subpoenas that sought discovery from nonparties where the district court issuing the order was in a circuit different from the one where the underlying action was taking place. *See Periodical Publishers Serv. Bur., Inc. v. Keys,* 981 F.2d 215, 217–18 (5th Cir. 1993); *Hooker v. Continental Life Ins. Co.,* 965 F.2d 903, 904–05 (10th Cir.1992); *Barrick,* 849 F.2d at 72–74 (2d Cir.); *In re Subpoena Served on the Cal. PUC,* 813 F.2d 1473, 1474–80 (9th Cir.1987).[3]

We do not believe, however, that these factors support application of the collateral order doctrine to discovery disputes such as this one. Whatever the propriety of allowing immediate review of orders quashing subpoenas seeking discovery from nonparties, that exception plainly does not apply here as a denial of discovery is not involved. Furthermore, MDK's position as a nonparty does not automatically mean that this controversy constitutes an independent question under *Cohen.* While the district court's order compelling discovery may seem a self-contained piece of litigation when viewed in isolation, that view fails to capture the full scope of these proceedings. The discovery order in question is but one of several discovery requests Mike's has made in order to secure the information necessary to prosecute its claim of monopolization against Lionel. Resolving the issue of whether Mike's will be able to secure this information from MDK perforce impacts the manner in which the Michigan trial will be conducted. Likewise, the time required to resolve an appeal of the North Carolina decision can only delay resolution of the Michigan litigation. Thus,

this appeal cannot be considered apart from the course of the main litigation, a necessary prerequisite for application of the collateral order doctrine. *See Cohen,* 337 U.S. at 546–47, 69 S.Ct. at 1225–26.

The order at issue here also fails to fulfill the *Cohen* requirement that review be unavailable. While it may be the case that the discovery order could not be effectively reviewed after the conclusion of the Michigan litigation, because MDK is not a party to that litigation and because discovery will have already occurred, that determination does not end our inquiry. The collateral order doctrine's concern with appealability is not simply a narrow concern about the availability of appeal upon final judgment. Rather, the doctrine addresses the worry that an aggrieved party will be denied review entirely. *See Firestone,* 449 U.S. at 376–77, 101 S.Ct. at 674–75.

Here, MDK cannot claim that it could never obtain review absent the appeal at bar. Courts have long recognized that a party sufficiently exercised over a discovery order may resist that order, be cited for contempt, and then challenge the propriety of the discovery order in the course of appealing the contempt citation. *See Corporacion Insular de Seguros v. Garcia,* 876 F.2d 254, 256–57 (1st Cir.1989) (stating that a nonparty must refuse to comply with a discovery order and be held in contempt before an appeal may be heard); *In re Application of the Am. Tobacco Co.,* 866 F.2d 552, 554 (2d Cir.1989) (same); *North Carolina Assoc. of Black Lawyers v. North Carolina Bd. of Law Examiners,* 538 F.2d 547, 549 (4th Cir.1976) (same). Indeed, the Supreme Court has pointed to this path to appellate review as a reason why discovery orders are not appealable under *Cohen. Firestone,* 449 U.S. at 377, 101 S.Ct. at 675. We recognize, of course, that the contempt route is a difficult path to appellate review, and one that may carry with it a significant penalty for failure. In discovery disputes, however, this difficulty is deliberate. As Judge Friendly has noted,

---

**3.** A few courts have also allowed appeal even where the underlying case and the discovery order arose in the same circuit. *See Heat &*

*Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1020–22 (Fed.Cir.1986); *Ariel v. Jones,* 693 F.2d 1058, 1059 (11th Cir.1982).

the contempt limitation ensures that the aggrieved party will first take a careful "second look" at the issue in question to determine whether it truly warrants inviting a contempt citation. *National Super Spuds v. New York Mercantile Exch.,* 591 F.2d 174, 180 (2d Cir. 1979). Indeed, the discovery appeals that arise from that calculus will most likely be those of the greatest significance to both parties—the party resisting discovery must risk a citation for contempt, while the party seeking discovery must move for contempt and thereby risk an interlocutory appeal. *Id.* The alternative to the contempt route, by contrast, is one that encourages appeal of every unpalatable discovery ruling.[4]

## IV.

In declining jurisdiction over the controversy here, we follow a long line of cases holding that courts of appeals lack jurisdiction to review orders compelling discovery of nonparties. *See Cobbledick,* 309 U.S. at 326–30, 60 S.Ct. at 541–44; *Alexander v. United States,* 201 U.S. 117, 120–22, 26 S.Ct. 356, 357–58, 50 L.Ed. 686 (1906); *Garcia,* 876 F.2d at 256–58 (1st Cir.); *Estate of Domingo v. Republic of the Phil.,* 808 F.2d 1349, 1350–52 (9th Cir.1987); *Alaska Land Leasing,* 778 F.2d at 578 (10th Cir.); *North Carolina Assoc. of Black Lawyers,* 538 F.2d at 548–49 (4th Cir.). Allowing nonparties to immediately appeal discovery decisions affecting them is a recipe for gridlock in the underlying litigation. As it is plain that this court lacks jurisdiction over this appeal, it is hereby

*DISMISSED.*

---

4. While we conclude that we would lack jurisdiction to review the discovery proceedings even if those proceedings had been terminated and the scope of discovery set, we must point out that, as of oral argument, the action below had yet to be concluded. There, both parties indicated that negotiations regarding the parameters of the protective order were not completed. We thus cannot even say that this case meets the collateral order doctrine's initial condition that the order below conclusively determine the question at issue. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 276–78, 108 S.Ct. 1133, 1136–38, 99 L.Ed.2d 296 (1988). A merits review of this discovery issue, when it is uncertain what documents will be turned over and what protection those documents will be afforded under the confidentiality order, would also go against the long-settled practice that courts of appeals will not pass upon "hypothetical" cases. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).