# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 4, 2006            Decided July 7, 2006

No. 05-5258

DIAMOND VENTURES, LLC,
APPELLEE

v.

HECTOR V. BARRETO, ADMINISTRATOR, UNITED STATES
SMALL BUSINESS ADMINISTRATION,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cv01449)

---

*Alan Burch*, Assistant United States Attorney, argued the cause for the appellant. *Kenneth L. Wainstein*, United States Attorney and *Michael J. Ryan*, Assistant United States Attorney, were on brief. *R. Craig Lawrence*, Assistant United States Attorney, entered an appearance.

*Joshua N. Rose* argued the cause for the appellee.

Before: HENDERSON, ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Concurring opinion filed by *Circuit Judge* ROGERS.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Hector Barretto, Administrator of the Small Business Administration (SBA), seeks interlocutory review of a district court order allowing the principals and employees of Diamond Ventures LLC (Diamond Ventures) access to applications submitted to the SBA in connection with the SBA's Small Business Investment Company (SBIC) program. The district court granted access via a protective order issued pursuant to Federal Rule of Civil Procedure 26 in Diamond Ventures' lawsuit against the SBA. For the following reasons, we grant the SBA's interlocutory appeal, reverse the district court's order and remand for further proceedings.

I.

Under the SBA's SBIC program, *see* 15 U.S.C. §§ 681 *et seq.*, a successful applicant is granted a license to operate as an SBIC, a small venture capital resource for small businesses.[1] The SBA guarantees the SBIC's securities in the event the SBIC fails, allowing the SBIC to better leverage capital investment. The heart of the application process involves an applicant's completion of the Management Assessment Questionnaire (MAQ), which includes detailed descriptions of the applicant's proposed operations, investment strategies, expertise and proposed sources of capitalization, including general categories of anticipated investment funds. MAQ, reprinted at Joint Appendix (JA) 25. The MAQ states that the information included therein "will be kept confidential to the extent permitted by law." *Id*. Between December 2001 and October 2002, Diamond Ventures applied for an SBIC license from the SBA four times and was denied a license each time. *See, e.g.*,

---

[1]Unless otherwise noted the facts are taken from the parties' submissions below. *See* Def's Memo. in Support of Mot. for Prot. Order, JA 6; Plaintiff's Mem. re: Def's Mot. for Prot. Order, JA 65.

Letter from Jeffrey D. Pierson, SBA Associate Administrator for Investment, to C. Earl Peek, Managing Partner, Diamond Ventures (Feb. 25, 2003), JA 182. Diamond Ventures' principal organizer, Earl Peek, then filed a complaint on its behalf against the SBA, alleging Diamond Ventures' applications had been denied on the basis of race in violation of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.*[2]

Pursuing discovery, Diamond Ventures sought production of all MAQs submitted by other SBIC applicants to the SBA. The SBA offered Diamond Ventures' counsel access to all of the more than 300 SBIC applications it has on file but opposed disclosure of the applications to Diamond Ventures' principals and employees on the grounds that each SBIC applicant has an expectation of privacy regarding its own MAQ and that the SBA's policy is to treat the information contained therein as confidential. The parties could not agree on a protective order and eventually filed simultaneous motions for a protective order under Federal Rule of Civil Procedure 26(c)(7).[3] JA 59, 65.

---

[2]Peek originally brought the claim *pro se* on behalf of himself and Diamond Ventures. Diamond Ventures later retained counsel and filed an amended complaint with itself as the only plaintiff. *See Diamond Ventures v. Barretto*, No. 03-1449, 2nd Am. Compl., R. Doc. 47.

[3]Rule 26(c)(7) provides that a party may move "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Under the rule "[t]he court may enter an order restricting disclosure of trade secrets and confidential research, development, or commercial information obtained during discovery. . . . The court can fashion any order it sees fit, limiting how the information may be used, *who may see it*, etc. . . ." Baicker-McKee et al., *Federal Civil Rules Handbook*, 571–2 (2003 ed.) (citing *Seattle Times v. Rhineheart*, 467 U.S. 20

The two motions were identical except that Diamond Ventures' version sought to allow its "officers and other personnel . . . who have a need to use protected materials in order to prepare for and assist in the prosecution of this action" access to the MAQ applications while the SBA's limited access to Diamond Ventures' counsel.[4] *Compare* Diamond Ventures' Proposed Prot. Order ¶ 3(a)(ii), JA 123, *with* SBA's Proposed Prot. Order ¶ 3(a), JA 60. Diamond Ventures' counsel argued that Diamond Ventures could not adequately press its discrimination claim without Peek's assistance because of Peek's expertise. Diamond Ventures' counsel also stated that hiring an outside expert to review the MAQs would be "prohibitively expensive." Pl.'s Mot. re: Def.'s Mot. for Prot. Order, JA 75.

On January 18, 2005 the district court by minute order denied the SBA's motion, JA 127 (Denial Order), and one week later granted Diamond Ventures' motion, entering a protective order that allowed Diamond Ventures' principals and employees access to the MAQs. JA 128 (Protective Order). The SBA filed a motion for reconsideration. On April 18, 2005, the district court denied the SBA's motion, stating that it "was not persuaded . . . that the information [in the MAQs] is confidential, or, as Defendant claims, that the applicants have an expectation of privacy in the information they submit." Apr. 17,

(1984) (emphasis added)).

[4]Diamond Ventures' proposed management included, in addition to Peek, Dileep Rao and Milton Marbarosh. The SBA's proposed protective order sought to deny any Diamond Ventures principal or employee access to the MAQs. Diamond Ventures argues before us that Peek "is the only member of the management team whose access to the disputed documents is necessary to plaintiffs' ability to prosecute this action at a feasible cost." Appellee's Br. 2 n.1.

2005 Reconsideration Order at 2, JA 175 (Reconsideration Order). The Reconsideration Order noted that Diamond Ventures argued "persuasively[] that it would be cost prohibitive for it to hire independent experts merely to review the documents. Instead, it must rely on its principals' expertise to assist counsel in determining what competitive information is relevant and necessary to the claims." *Id.* The SBA appeals the three orders and in the alternative petitions for a writ of mandamus preventing release of the information. *See* Appellant's Br. 16–17.

## II.
### A. Jurisdiction

In *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), the United States Supreme Court set forth the "collateral order" doctrine authorizing the interlocutory appeal of an order so long as the order "[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 126 S.Ct. 952, 957 (2006) (quotations omitted). The doctrine is "stringent[ly]" applied so as not to "overpower the substantial finality interests" of 28 U.S.C. § 1291.[5] *Id.*

The first and third *Cohen* factors are plainly met in this case. The Protective Order conclusively determines the sole issue in this dispute: Diamond Ventures' principals' and employees' access to the MAQs. In addition, the order granting such access

[5]28 U.S.C. § 1291 provides that courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." A decision is "final" under section 1291 if it "leaves nothing for the court to do but execute the judgment." *Pigford v. Veneman*, 369 F.3d 545, 547 (D.C. Cir. 2004) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

6

would be unreviewable at the litigation's end because the harm the SBA alleges—competitive harm to the SBIC applicants caused by Diamond Ventures' principals' review of the formers' MAQs—could not be undone on appeal. *See Providence Journal v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) (confidentiality lost once documents were surrendered pursuant to court order; "[t]he status quo could never be restored"). The closer issue is the second *Cohen* requirement, which itself consists of two prongs: separability and importance. As to separability, Diamond Ventures' management's access to the MAQs has nothing to do with the merits of its discrimination claim. Diamond Ventures argues that the "importance" factor is lacking because confidential information, unlike privileged material, is discoverable under the federal rules. Appellee's Br. 16–18 (citing and distinguishing *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1209–10 (D.C. Cir. 2004) (*Medical Records*) (discovery order compelling disclosure of privileged information was "important in *Cohen*'s sense" because appellant claimed information was protected by psychotherapist's privilege and interests promoted by protecting it from disclosure were "weightier than the societal interests advanced by the ordinary operation of final judgment principles") (citation and quotation marks omitted). An "important issue" under *Cohen* is determined not by the nature of the information being sought but by the interest that would be harmed if immediate review were not allowed weighed against the interest in finality. *See United States v. Philip Morris*, 314 F.3d 612, 617 (D.C. Cir. 2003) (under *Cohen*, issue is important "if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule") (citing *Digital Equip. v. Desktop Direct*, 511 U.S. 863, 879 (1994)); *id.* at 618–19 ("The importance prong requires weighing the institutionally significant status or relationship at

stake.") (quotations omitted). In *Philip Morris* we held that a discovery order implicating the attorney-client privilege was significant compared to the counterbalancing interest in finality because the privilege "rests at the center of our adversary system." *Philip Morris*, 314 F.3d at 618. In *Medical Records*, the significant interest under *Cohen*'s second factor was that the documents sought to be discovered were covered by the psychotherapist's privilege under Federal Rule of Evidence 501 and by the medical records privilege under the District of Columbia Municipal Code. *Medical Records*, 381 F.3d at 1209–10.

Using the *Philip Morris* test, we believe the privacy and competitive interests of the SBIC applicants that "would potentially go unprotected without immediate appellate review" overcome the interest in finality. As the SBA points out, the MAQ contains information of the type "routinely protected" under the Trade Secrets Act, *see* Appellant's Reply Br. 7 (citing 18 U.S.C. § 1905), and under Exemption 4 of section 552 of the Freedom of Information Act,[6] *cf. McDonnell Douglas Corp. v. U.S. Dep't of Air Force*, 375 F.3d 1182, 1190, 1192 (D.C. Cir. 2004) (concluding disclosure of pricing information likely to cause substantial competitive harm and therefore exempt from disclosure). The SBA submitted declarations from current and former SBA officials stating that the SBA has in the past successfully invoked FOIA Exemption 4 to protect MAQ information from disclosure. *See* Decl. of Margaret Theresa Dennin, Chief Administrative Officer for SBA Investment Division, ¶ 4, JA 58 ("SBA has never disclosed confidential business information contained in MAQs in response to a FOIA

---

[6]FOIA's Exemption 4 exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).

request"); Decl. of Michael Wyatt, former SBA General Counsel, ¶ 5, JA 149 ("SBA takes the position and advises Applicants that their [MAQ] submissions fall within FOIA Exemption 4"). While we do not equate the MAQ with a trade secret,[7] we do believe that the notice on the face of the MAQ itself that the information submitted "will be kept confidential to the extent permitted by law" as well as the SBA's and SBIC applicants' institutional interests in confidentiality bring the MAQ within caselaw allowing interlocutory appeal.

An SBIC applicant relies on the notice, along with other assurances given by the SBA,[8] in deciding to submit the MAQ which discloses vital business strategies such as the categories of investors from whom it has solicited funds before applying,

---

[7]We note, however, that if MAQ information were protected under the Trade Secrets Act, it nonetheless could be discoverable. *See* Fed. R. Civ. P. 26(c)(7); *supra* note 3 (court "may enter an order restricting disclosure of trade secrets," fashioning "any order it sees fit"); *Grumman Aerospace Corp. v. Titanium Metals Corp.*, 91 F.R.D. 84, 90 (E.D.N.Y. 1981) ("Nor does the Trade Secrets Act . . . provide any basis for preventing disclosure. Disclosure pursuant to the discovery rules is disclosure 'authorized by law,' which the terms of the Act permit."). Any protection provided by statute would still be relevant to the balancing of interests required under Rule 26. *See Medical Records*, 381 F.3d at 1215–16 ("[I]n determining which interests to weigh in the Rule 26 balance, courts look to statutory confidentiality provisions, even if they do not create enforceable privileges.").

[8]*See* Dennin Decl. ¶¶ 4–5, JA 57–58 ("I have had numerous opportunities to receive feedback from SBICs regarding their objections to the disclosure, either through SBA's response to a FOIA request or in civil litigation, of confidential and proprietary business information they submit to SBA, including [MAQ information]. . . . SBA has never disclosed confidential business information contained in MAQs . . . absent an appropriate protective order.").

*see* MAQ at 11, JA 35, categories of anticipated sources of investment funds, *id.* at 12, JA 36, names and contact information of its equity partners, *id.* at 13, JA 37, and its "investing strategy." Its "investing strategy," according to the MAQ, represents the ideal dollar distribution of an applicant's investments among industry sectors and its overall investment and risk reduction philosophy. *Id.* at 16, JA 40. The "cost[] of delay," *Philip Morris*, 314 F.3d at 618, would be the release of the information—submitted to the SBA with notice the information would be kept confidential to the extent permitted by law—to a potential competitor. This cost outweighs the "costs of piecemeal review," *id.* at 617–18, that underlie the finality rule because, once the information is disclosed, the SBIC applicant's confidentiality interest is permanently lost. As in *Philip Morris*, where we held that the release of information covered by the attorney-client privilege would eviscerate the "institutional interest" in "full and frank communication between client and attorney," *id.* at 618, releasing MAQ information whose confidentiality an applicant is notified will be protected would eviscerate the "full and frank" disclosure between the applicant and the SBA necessary to the effective enforcement of the SBIC program. If an applicant hesitates to disclose information regarding its business plan to the SBA, the agency may then have to make a licensing decision without the benefit of full information—potentially resulting in a loss to the public fisc given the fact that the SBA guarantees an SBIC's securities in the event of default. *See* 15 U.S.C. § 683(b) (authorizing SBA to "purchase, or to guarantee the timely payment of all principal and interest as scheduled on, debentures or participating securities issued by" SBIC). Moreover, the SBIC program could also be crippled by future applicants' unwillingness to disclose information regarding their business plans upon learning of the disclosure of the MAQs here. Appellant's Br. 21–22; *see also Akzo N.V. v. U.S. Int'l Trade*

*Comm.*, 808 F.2d 1471, 1483 (Fed. Cir. 1986), *cert. denied*, 482 U.S. 909 (1987) ("Disclosure of sensitive materials to a [business] adversary would undoubtedly have a chilling effect on the parties' willingness to provide the confidential information essential to the [agency's] fact-finding processes.") We believe the confidentiality of an SBIC applicant's MAQ information is a sufficiently important interest to authorize our review under *Cohen*.

### B. The Merits

As noted, the district court has wide discretion in managing discovery. *Medical Records*, 381 F.3d at 1215 (" 'Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly,' " and " 'it is appropriate for the court, in exercising its discretion . . . , to undertake some substantive balancing of interests . . . .' ") (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (alterations in *Medical Records*) and *Laxalt v. McClatchy*, 809 F.2d 885, 890 (D.C. Cir. 1987)); 8 Wright and Miller, *Federal Practice and Procedure* § 2043 (2d ed. 1987) (determining "reasonable protective measures . . . to minimize the effect on the party making the disclosure" of confidential information within trial court's discretion). We review the district court's discovery ruling for abuse of discretion. *Medcial Records*, 381 F.3d at 1211. With respect to a protective order issued pursuant to Rule 26(c)(7), the district court is to undertake "an individualized balancing of the many interests that may be present in a particular case." *Id.* (quotation omitted); *see In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988) (remanding discovery order because district court did not "show engagement in this essential balancing process").

The SBA argues that the district court made three mistakes of fact that led it to improperly weigh the competing interests. First, the district court stated it "was not persuaded . . . that the information" in the MAQ "[was] confidential or, as Defendant claims, that the applicants have an expectation of privacy in the

information they submit." Reconsideration Order at 2, JA 175. Second, it was not convinced that "disclosure of the MAQ information to competitive bidders could be harmful to applicants and chill the bidding process" inasmuch as "there is no competitive advantage because SBICs do not compete with each other for funding." *Id.* Third, the district court found that Diamond Ventures' lawyers had to rely on its principals' expertise to assist them in determining what MAQ information was relevant to the discrimination claim because it would be too costly for Diamond Ventures to hire an outside expert.[9]

We agree with the SBA that the district court erred in finding that SBIC applicants have no expectation of privacy in their MAQs—the notice on the face of the MAQ that the information included therein "will be kept confidential to the extent permitted by law" belies its finding. The district court ignored the notice and rejected without explanation the SBA's

---

[9]The district court also concluded that to the extent the SBA feared *public* disclosure of the MAQ data, that fear was negated by the stipulation in the Protective Order that "protected material shall be used solely for the purposes of this litigation." Protective Order ¶ 3(a) at 2, JA 129; Reconsideration Order at 2, JA 175. The SBA maintains that once Diamond Ventures' principals have information regarding the business operations and strategies of other SBIC applicants, they cannot be reasonably expected to refrain from using the information merely because they learned of it in this litigation. Use limitations are not unusual in protective orders, *see e.g.*, 8 Wright and Miller, *Federal Practice and Procedure* § 2043 n. 21 (2d ed. 1987) (citing cases), and there is no reason to conclude that Diamond Ventures' principals would willfully disobey a court order. *But see U.S. Steel v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) (recognizing likelihood of inadvertent disclosure of trade secrets if information disclosed to competitor's in-house counsel "involved in competitive decisionmaking").

uncontested showing that MAQ applicants have an expectation of privacy in their applications and believe the SBA will not disclose the information contained in them. *See* Dennin Decl. ¶ 4, JA 58; Wyatt Decl. ¶¶ 4–5, JA 149.[10] Moreover, the fact that SBIC applicants may not directly compete with each other for SBIC licensure does not mean that SBIC licensees do not compete in the venture capital market for funding—if Diamond Ventures' principals, and Peek in particular, review other MAQs, they will gain information about successful SBICs' strategies, investor categories and funding sources and be able to use the information either to apply once again for SBIC licensure or to compete for funding in the venture capital market or both. In short, the district court erroneously discounted an SBIC applicant's confidential and competitive interests in its MAQ.

On the other side of the scale, the district court overvalued Diamond Ventures' purported need for an expert to review the MAQs in order to support its discrimination claim.[11] The

---

[10]A former SBA General Counsel declared that in his experience representing over 100 SBIC applicants, applicants "have an expectation that SBA will withhold [MAQ] materials from disclosure" and to allow Diamond Ventures' principals access to the MAQs would result in "disclosure to a direct competitor of confidential and proprietary Applicant data of the sort that [SBIC] Applicants and SBA have presumed for decades to be protected from discovery and from disclosure by Exemption 4 of FOIA." Declaration of Michael K. Wyatt, JA 150–51.

[11]Diamond Ventures' claim that Peek can substitute for an outside "expert" is somewhat dubious given that he has failed in four attempts to obtain an SBIC license. *See* Letter from Jeffrey D. Pierson, SBA Associate Administrator for Investment, to C. Earl Peek, Managing Partner, Diamond Ventures (Feb. 25, 2003), JA 182.

information relevant to its claim—i.e., the race of the principals of other SBIC applicants[12] as well as the business strategies of other SBIC applicants for comparison to its applications—can be collected, we are confident, by counsel without an expert's assistance. Diamond Ventures' argument that hiring an outside expert to review the documents would be too costly—a factor on which the district court expressly relied, *see* Reconsideration Order at 2, JA 175–76 ("Plaintiff argues, persuasively, that it would be cost prohibitive for it to hire independent experts merely to review the documents. Instead, it must rely on its principals' expertise to assist counsel in determining what comparative information is relevant and necessary to the claims. . . . [and] the Court finds that Plaintiff's interests in prosecuting this case and having adequate legal representation outweigh Defendant's competing interests arising from unfounded fears of public disclosure and competitive harm.")—is irrelevant to the balancing. That Peek originally filed his action *pro se* and was accorded *in forma pauperis* status by the district court has no bearing on Diamond Ventures' financial health because a corporation cannot file a *pro se* action or appear *in forma pauperis*. *See Rowland v. Calif. Men's Colony*, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel"). Diamond Ventures' alleged inability to hire an expert should not be balanced against the legitimate confidentiality interests of all other MAQ applicants

---

[12]The MAQ itself does not ask for information regarding race. Diamond Ventures's counsel proposes to review photographs submitted with the MAQ and related documents which "normally include photographs of the key members of the proposed management team" in order to determine the race of MAQ applicants. Pl.'s Mem. re: Def.'s Mot. for Prot. Order at 5, JA 65.

14

and the district court erred as a matter of law in doing so. *See Koon v. United States*, 518 U.S. 81, 100 (1996) (because "[a] district court by definition abuses its discretion when it makes an error of law," "[t]he abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions"); *Medical Records*, 381 F.3d at 1211 (quoting *Koon*).

For the foregoing reasons, we conclude that the district court abused its discretion in ordering that the MAQs of all other applicants for SBIC licensure be disclosed to Diamond Ventures' principals and employees. Accordingly, we vacate Part 3(a)(ii) of the Protective Order entered on January 25, 2005 and remand for further proceedings. The SBA's challenges to the Denial Order and the Reconsideration Order and its petition for mandamus relief are dismissed as moot.

*So ordered.*

ROGERS, *Circuit Judge*, concurring: I would limit the scope of our jurisdiction and merits holdings in the following manner:

**I.**

The court holds that it has jurisdiction under the collateral order doctrine, *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), over an interlocutory challenge to a protective order allowing discovery of third-party applications submitted to the Small Business Administration ("SBA") with the promise of "confidential[ity] to the extent permitted by law." However, there is no need to suggest that one's party's unilateral assertion of a compromised "trade secret" or "privacy interest" would suffice to meet the "importance" prong of the collateral order doctrine. *See Digital Equip. v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994); *United States v. Philip Morris Inc.*, 314 F.3d 612, 617-19 (D.C. Cir. 2003). Such liberality would not make for a "narrow" exception to the finality rule, *see Digital Equip.*, 511 U.S. at 868, and could open the way for intermediate appellate review of all manner of discovery disputes.

The Fourth Circuit in *MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116 (4th Cir. 1994), rejected collateral order review of the "trade secret"-type dispute on the basis of its concern about the difficulty of cabining the notion of a trade secret:

> The dangers of a trade secrets exception to the nonappealability of discovery orders should be apparent. A judicially created exception to nonappealability for categories of sensitive information is the quintessential slippery slope.

*Mike's Train House*, 27 F.3d at 120. I share this concern, but conclude that it is answered in this instance because the Trade

Secrets Act, 18 U.S.C. § 1905 (2000),[1] generally protects this type of information from disclosure when it is in the hands of a government agency, and the agency has an important institutional interest in full disclosure by third-party applicants to its licensing program.

The SBA described, through three declarations, the sensitive nature of the commercial information contained in the application for licensing (known as the Management Assessment Questionnaire, or "MAQ"). As the court acknowledges, Op. at 8-9, the MAQs contain information that the SBA describes as of the type "routinely protected" under the Trade Secrets Act, 18 U.S.C. § 1905, and under Exemption 4 (regarding trade secrets and commercial or financial information) of the Freedom of Information Act ("FOIA"), 5 U.S.C § 552(b)(4) (2000). Although Diamond Ventures disputes the sensitivity of some information requested by the MAQs, it admits the MAQs "are likely to contain financial information of the kind whose disclosures is prohibited by the Trade Secrets Act if such disclosure is not 'authorized by law.'"

---

[1] The Trade Secrets Act prohibits, in relevant respects, employees of the federal government from

> publish[ing], divulg[ing], disclos[ing], or mak[ing] known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties . . . which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association . . . .

18 U.S.C. § 1905.

Appellee's Br. at 3-4. Given that venture capital firms may compete one with another for private funding, the disclosure of information of the sort requested by the MAQ could "cause substantial harm to the competitive position of the person from whom the information was obtained," *McDonnell Douglas Corp. v. Dep't of the Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004) (citing *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)), and thus would fall within the protections of the Trade Secrets Act, which by its plain letter prohibits release by the SBA of information on the "source of any income, profits, losses, or expenditures of any person [e.g., the applicants who submit MAQs], firm, . . . or association," 18 U.S.C. § 1905. Further, the SBA submitted declarations from current and former SBA officials stating that the SBA has successfully invoked FOIA Exemption 4 to protect MAQ information from disclosure.[2] Additionally, the SBA maintains, and Diamond Ventures does not dispute, that full disclosure of the information requested by the MAQs is critical to the success of the SBA's Small Business Investment Company program. *See* Appellant's Br. at 21-22; Op. at 9. Trade Secrets Act protections are at least co-extensive with the protections afforded under FOIA Exception 4. *McDonnell Douglas Corp.*, 375 F.3d at 1185 (citing *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1151 (D.C. Cir. 1987)).

Consequently, although the protection afforded by the Trade Secrets Act is not an evidentiary privilege, as was the case in the

---

[2] *See* Decl. of Margaret Theresa Dennin, Chief Administrative Officer for SBA Investment Division, ¶ 5 ("SBA has never disclosed confidential business information contained in MAQs in response to a FOIA request . . . absent an appropriate protective order"); Decl. of Michael K. Wyatt, former SBA General Counsel, ¶ 5 ("SBA takes the position and advises Applicants that their [MAQ] submissions fall within FOIA Exemption 4"); Op. at 7-8.

interlocutory appeals *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1210 (D.C. Cir. 2004), and *Philip Morris*, 314 F.3d at 617-18, the protections in this instance are similar to the statutory bar in *In re England*, 375 F.3d 1169, 1176 (D.C. Cir. 2004). The statutory protections and the institutional interests inform the analysis of the "importance" element of the *Cohen* analysis and limit the scope of the holding on jurisdiction that is necessary to hear this appeal. Under this analysis, the court has no occasion to consider whether a claim that a discovery order will compromise "privacy" or "trade secrets" gives rise to an appealable dispute in the absence of (1) Trade Secret Act (or comparable statutory) restrictions upon the party holding the information, *see England*, 375 F.3d at 1176, and (2) a governmental interest, similar to the SBA's institutional and programmatic interest in full disclosure by third parties, *see* Op. at 9-10, that might be compromised were the information made available during discovery to the principals of a potential licensee. Here, both considerations increase the relative importance of the interests that would potentially go unprotected without immediate appellate review. *See England*, 375 F.3d at 1176; *Philip Morris*, 314 F.3d at 617. I would leave for another day the question of whether the court would have jurisdiction under the collateral order doctrine where a party points only to the bare standard of Fed. R. Civ. P. 26(c)(7) as the source of its protected interest from disclosure. *See generally*, 8 Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE, Civ. 2d § 2043 (2006).

## II.

Turning to the merits, it suffices to hold that the district court abused its discretion by failing to consider the legally relevant factors. *See generally Kickapoo Tribe in Kan. v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995). As the court concludes, Op. at 11-13, the district court failed both to address

the SBA's promise of confidentiality to third-party applicants and to consider the fact that third-party applicants compete with each other in the market for venture capital funding; additionally, the district court considered the legally irrelevant factor of Diamond Venture's inability to hire an expert. In light of these errors, it is apparent the district court failed to balance the legally relevant factors. *See Sealed Case (Medical Records)*, 381 F.3d at 1217; *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988); *cf. LaSalle Extension Univ. v. FTC*, 627 F.2d 481, 484 (D.C. Cir. 1980). The SBA does not challenge the protective order, with its use limitation, insofar as it allows counsel for Diamond Ventures to review the MAQs; it challenges only the provision allowing principals of Diamond Ventures to review the MAQs. Op. at 11 n.9. This court is not well-positioned to conclude that the district court "overvalued Diamond Ventures' purported need for an expert to review the MAQs," Op. at 12, and particularly that we may be "confident" that any illegal redlining that might be revealed by the MAQs and SBA's approval patterns may be apparent to "counsel without an expert's assistance," *id*. at 13. Such conclusions run counter to the district court's findings, which are predicated upon its greater familiarity with the litigation, and are unnecessary, because they are not germane to the question of whether the district court balanced the relevant factors.